25 F.3d 936
 James F. QUINLAN, Plaintiff-Appellee/Cross-Appellant,
v.
KOCH OIL COMPANY, A DIVISION OF KOCH INDUSTRIES, INC.,
Defendant-Appellant/Cross-Appellee,
Phillips Petroleum Company; GPM Gas Corporation; Texaco
Trading and Transportation, Inc., Amicus Curiae,
National Association of Royalty Owners; Oklahoma Chapter of
the National Association of Royalty Owners,
Movant-Amicus Curiae.
 Nos. 92-5219, 92-5223.
 United States Court of Appeals,
Tenth Circuit.
 Decided June 1, 1994.
 
 Kelley D. Sears, Koch Industries, Inc., Wichita, KS (Cathy A. Ervin, Koch Industries, Inc., Wichita, KS, Stephen R. Clark of McCormick, Andrew & Clark, Tulsa, OK, with him on the brief), for defendant-appellant/cross-appellee.
 Sam T. Allen, IV of Loeffler, Allen & Ham, Sapulpa, OK, for plaintiff-appellee/cross-appellant.
 Randle G. Jones, Texaco Trading and Transp., Inc., New Orleans, LA, Shelley Himel, Phillips Petroleum Co., GPM Gas Corp., Oklahoma City, OK, filed an amicus curiae brief for Texaco Trading and Transp., Inc., Phillips Petroleum Co., and GPM Gas Corp.
 Robin Stead of Stead & Associates, Norman, OK, filed an amicus curiae brief for the Nat. Ass'n of Royalty Owners and the Oklahoma Chapter of the Nat. Ass'n of Royalty Owners.
 Before SEYMOUR, Chief Judge, LOGAN, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, KELLY and HENRY, Circuit Judges and KANE*, District Judge.
 ORDER
 The court has for consideration petitions for rehearing filed by Texaco Trading and Transportation Inc., Phillips Petroleum Company and GPM Gas Corporation, as well as a petition for rehearing with suggestion for rehearing in banc filed by Koch Oil Company and Quinlan's response thereto. The Court also has for consideration Koch's motion for leave to file a reply brief.
 Upon consideration whereof, Koch's motion to file a reply brief is denied.
 The panel that rendered the decision sought to be reheard grants the petitions for rehearing for the limited purpose of amending the opinion heretofore filed in these cases. The panel withdraws the opinion filed April 12, 1994, and files an amended opinion as of the date of this order. Having filed an amended opinion, the panel denies the petitions for rehearing in all other respects.
 In accordance with Rule 35(b), Federal Rules of Appellate Procedure, the suggestion for rehearing in banc was transmitted to all of the judges of the court who are in regular active service. No member of the panel and no judge in regular active service on the court having requested that the court be polled on rehearing in banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing in banc is denied.
 Before ANDERSON and BALDOCK, Circuit Judges, and KANE, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant Koch Oil Company ("Koch") appeals the district court's grant of partial summary judgment and the subsequent jury verdict, both in favor of Plaintiff James F. Quinlan ("Quinlan"). Quinlan cross-appeals, claiming the district court erred by reducing the jury's punitive damage award and erred in refusing to award Quinlan attorney's fees. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 
 2
 Koch, and its predecessor, Rock Island Oil ("Rock Island"), began purchasing oil from an oil lease located in Creek County, Oklahoma in 1954. Quinlan acquired a mineral interest in the oil lease by quitclaim deed from his father on May 6, 1965. Upon receiving a copy of this quitclaim deed in May 1965, Rock Island sent Quinlan a transfer order to complete. On May 26, 1965, Quinlan and his father completed and signed the transfer order, and then returned it to Rock Island. Rock Island, and later Koch, paid Quinlan for his oil interest from 1965 to 1971. In December 1971, the lease was unitized and included in the Scott Dutcher Sand Unit.
 
 
 3
 Unitization results in enhanced oil recovery by injecting water into some wells in the unit while other wells actually produce the oil. Because all wells do not produce oil after unitization, a new allocation to those owning an interest in the wells included in the unit must occur. Thus, an interest holder will not receive the same percentage of oil produced after unitization as the holder received from one well prior to unitization. At unitization, the facts giving rise to the present controversy began when Koch stopped paying Quinlan for his oil and began placing Quinlan's oil proceeds in a suspense account.
 
 
 4
 On February 29, 1972, Koch apparently mailed notice of the unitization with enclosed division orders to the operator of Quinlan's oil lease. The operator was to distribute and collect signed division orders from all leaseholders in the Creek County oil lease. Koch did not send a division order or notice of unitization directly to Quinlan, and if Quinlan ever received the division order from the operator (a fact which Quinlan was unsure of at trial), he neither signed it nor returned it to Koch.
 
 
 5
 Because Koch received no post-unitization documentation from Quinlan, it continued placing Quinlan's oil proceeds in suspense. Between September 1973 and December 1975, Koch did not purchase any oil from the unit, but resumed purchasing from the unit in January 1976. At this time, Koch mailed new division orders to a new operator. Again, Koch received no documentation from Quinlan, and Koch again suspended Quinlan's money. Because Quinlan was a poor record keeper, as he himself admitted at trial, Quinlan was not aware that oil proceeds to which he was entitled were being held in suspense.
 
 
 6
 In July 1988, an heir-finder group called International Searchers, Inc. ("ISI") contacted Quinlan and informed him that it had located assets unknown to him. ISI offered to reveal these assets to Quinlan in exchange for fifty percent of the amount recovered. When Quinlan was unable to determine what these assets might be, he contracted with ISI in November 1989, and ISI informed him of the suspense funds at Koch. Quinlan submitted a claim to Koch, and on January 1, 1990, Koch paid Quinlan $166,608.58 for monies suspended by Koch between 1976 and December 31, 1989.[1] Later, on January 20, 1990 and April 1, 1990, Koch tendered checks for simple interest in the amount of $25,227.52 and $52,826.95, calculated by Koch at a rate of six percent.
 
 
 7
 In the district court, Quinlan claimed he was entitled to interest at the annual rate of twelve percent, compounded annually, pursuant to Okla.Stat. tit. 52, Sec. 540 D.[2] The district court agreed, and in an order granting Quinlan's motion for partial summary judgment, the district court found that Quinlan was entitled to twelve percent interest compounded annually from July 1, 1980.[3] The district court also held, as a matter of law, that Koch owed a fiduciary duty to Quinlan to notify Quinlan of the suspense monies. Because the court in pretrial orders had decided Quinlan's Sec. 540 claim for interest and had found Koch owed Quinlan a fiduciary duty as a matter of law, the only issue before the jury was whether Koch had breached that fiduciary duty, and the jury found that a breach had occurred.
 
 I.
 
 8
 Koch first argues on appeal that it was not required under Okla.Stat. tit. 52, Sec. 540 to pay Quinlan any interest at all on the monies held in suspense and that it paid Quinlan six percent interest only as a courtesy. Section 540 provides for two different rates of interest to be paid by the purchaser (in this case, Koch) depending upon the circumstances. If proceeds cannot be paid because marketable title is in dispute, Sec. 540 A provides that the purchaser must pay six percent interest. On the other hand, if a purchaser violates Sec. 540 by failing to pay proceeds to those legally entitled to them, the purchaser is required to pay twelve percent interest.[4] We review issues of state law de novo, giving no deference to the district court's conclusion. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991).
 
 
 9
 Koch argues that Quinlan was not entitled to twelve percent interest because he was not "legally entitled to the proceeds" as he failed to show either marketable title or sign a division order at unitization in 1971. This argument requires detailed explanation. In Hull v. Sun Refining and Marketing Co., 789 P.2d 1272 (Okla.1990), the Oklahoma Supreme Court held that a purchaser of oil could not withhold payment of the purchase price solely because of a seller's refusal to sign a division order and that "[t]he only condition justifying suspension of royalty payments is a lack of marketable title." Id. at 1279. The Hull court further stated that "[t]he right to payment rests upon a showing of marketable title." Id. Koch relies on the word, "showing," in Hull to argue that Quinlan neither made a showing to Koch of marketable title nor signed a division order, and thus Quinlan was not "legally entitled to the proceeds" under Sec. 540 and thus not entitled to recover twelve percent interest. We disagree.
 
 
 10
 We decline to read Hull as broadly as Koch would have us. Taken literally, the language in Hull that "[t]he right to payment rests upon a showing of marketable title," id., would require a royalty owner to establish a right to payment by a showing of marketable title every time a royalty payment was due. In light of other language in Hull, we do not believe this to be what the court contemplated. In interpreting the Oklahoma legislature's intent in enacting Sec. 540, the court in Hull stated, "[b]y using marketable title as a standard for payment under Sec. 540, the [l]egislature expressed its intent that suspense of royalty payments was proper only when a legitimate question as to marketability of title existed." Id. at 1277 (emphasis added). Because in the instant case we conclude that the marketability of Quinlan's title was not legitimately in question at the time of unitization, Sec. 540 did not require Quinlan to make an affirmative showing of marketable title at that time in order to be deemed "legally entitled to the proceeds" from his oil lease.
 
 
 11
 In May of 1965, Quinlan's father transferred his portion of the oil lease to Quinlan, and Koch received a quitclaim deed and transfer order as evidence of this transfer. Koch asserts that the transfer order did not constitute evidence of marketable title, and we agree. Transfer orders merely warrant that the signor is the owner and authorize the purchaser to pay the signing parties for a specified division of interest; transfer orders do not amount to a conveyance of interest. See In re Unioil, Inc., 962 F.2d 988, 995 (10th Cir.1992) (citing 4 Oil & Gas Law Sec. 704.1 at 579-80, Sec. 704.5 at 586, Sec. 707 at 609-12 (footnotes omitted); 3A WL Summers, The Law of Oil and Gas Sec. 590 at 140-42 (1958)). Furthermore, under Oklahoma law, a transfer order becomes a nullity at unitization. See Young v. West Edmond Hunton Lime Unit, 275 P.2d 304, 309 (Okla.1954). Thus, the transfer order by itself could not serve as evidence of marketable title post-unitization.
 
 
 12
 Although the transfer order alone could not serve as evidence of marketable title after the 1971 unitization, Koch held other evidence of marketable title in the form of the quitclaim deed. From a title opinion completed in 1955, Koch knew that Quinlan's father had marketable title, and from the 1965 quitclaim deed, Koch knew that title had been transferred to Quinlan. Indeed, Koch paid Quinlan for his oil interest up until unitization. In the absence of any principled objection to Quinlan's title, Koch had no legitimate reason to object to Quinlan's title, other than Quinlan's failure to execute a division order, which Oklahoma law says is not a prerequisite to payment of royalties. See Hull, 789 P.2d at 1279. We therefore hold that at unitization, Quinlan was "legally entitled to the proceeds" from his oil lease, see Okla.Stat. tit. 52, Sec. 540, even though he failed to sign and return either the 1971 or the 1976 division orders, cf. Hull, 789 P.2d at 1279 (oil purchaser cannot withhold payment of the purchase price solely because of seller's refusal to sign division order). Because Quinlan was "legally entitled to the proceeds," the district court correctly held that Koch was required to pay Quinlan twelve percent interest on the suspense monies pursuant to Sec. 540 D.[5]
 
 II.
 
 13
 Koch next argues that even if it has to pay Quinlan twelve percent interest, the district court erred in holding that the interest must be compounded annually beginning July 1, 1980. Koch asserts that because the language "to be compounded annually" was not added to Okla.Stat. tit. 52, Sec. 540 D until July 1, 1989, and because the Oklahoma legislature did not clearly provide that the 1989 amendment was retroactive, the district court should not have allowed compound interest prior to July 1, 1989. We review this state law issue de novo. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991).
 
 
 14
 Under Oklahoma law, statutes and amendments to statutes are to be construed as operating prospectively only, unless the legislature clearly expresses an intent that it operate retroactively. Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Bd., 803 P.2d 1119, 1122 (Okla.1990). Furthermore, a clarifying amendment--i.e., one which explains ambiguous law to more clearly express the legislative intent--will be given retroactive application if it does not impair vested rights. Texas County Irrigation, 803 P.2d at 1122. Thus, we must examine whether the 1989 amendment to Sec. 540 was either expressly intended by the legislature to be retroactive or intended to clarify Sec. 540.
 
 A.
 
 15
 The district court held that the legislature expressed its intent to make the 1989 amendment retroactive because the words "calculated from the date of first sale" follow the words of the 1989 amendment--"to be compounded annually." See supra note 4. The district court further supported its retroactive application of compounded interest by citing Oklahoma Attorney General's opinion no. 89-53 which implied that the compounded interest provision should be applied retroactively. We find two problems with the district court's analysis. First, the words "calculated from the date of first sale," upon which the district court relied, were part of a 1985 amendment and thus do not "clearly" establish retroactive intent by the legislature that enacted the 1989 amendment as Oklahoma law requires. Furthermore, attorney general's opinions, although given great respect, are not controlling when a court is determining legislative intent. See Davidson Oil County Supply Co., Inc. v. Pioneer Oil & Gas Equip. Co., 689 P.2d 1279, 1281 (Okla.1984). Because the attorney general's opinion was addressing another issue during which it made passing reference to the retroactivity of the compound interest provision with no support or analysis, nothing in the attorney general's opinion convinces us that the Oklahoma legislature clearly intended retroactivity. Thus, we conclude the legislature did not clearly express its intent that the 1989 provision be applied retroactively.
 
 B.
 
 16
 We also hold that the 1989 amendment was not merely a clarifying amendment intended to explain a previously ambiguous statute. It is a general principle of law that in the absence of a contract or a statute specifically providing for compound interest, compound interest is not to be computed on a debt. See Cherokee Nation v. United States, 270 U.S. 476, 490, 46 S.Ct. 428, 433-34, 70 L.Ed. 694 (1925). Accord Stovall v. Illinois Central Gulf R.R. Co., 722 F.2d 190, 192 (5th Cir.1984); Burlington Northern R.R. Co. v. Whitt, 611 So.2d 219, 224 (Ala.1992); Otis v. Cambridge Mutual Fire Ins. Co., 850 S.W.2d 439, 446 (Tenn.1992). Furthermore, the Oklahoma Supreme Court has held that language similar to that of pre-1989 Sec. 540 D--i.e., language to the effect that interest shall be calculated "at the rate of ten percent (10%) per annum, from the date of rendition"--provided only for computation of simple interest. Lee v. Volkswagen of America, Inc., 743 P.2d 1067, 1069 (Okla.1987). Thus, prior to 1989, Sec. 540 D provided only for the collection of simple interest. Because the 1989 amendment changed the law and provided for compound interest, the 1989 amendment is a substantive rather than clarifying amendment and thus not subject to retroactive application. Therefore, we conclude that the 1989 amendment providing for compounded interest should be applied prospectively only, and Quinlan is only entitled to twelve percent simple interest, rather than compounded interest, prior to the amendment's effective date of July 1, 1989.[6]III.
 
 
 17
 Koch next disputes the district court's pretrial holding that, as a matter of law, Koch had a fiduciary duty to notify Quinlan of the oil proceeds held in suspense. The district court found this fiduciary relationship as a matter of law in response to Koch's motion to dismiss for failure to state a claim on the fiduciary duty issue.
 
 
 18
 Under Oklahoma law, the existence of a fiduciary relationship is a question of fact which must be proven by the party asserting the relationship. Steinbrugge v. Haddock, 281 F.2d 871, 872 (10th Cir.1960); see also Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 730 (10th Cir.1991); First National Bank & Trust Co. of Vinita v. Kissee, 859 P.2d 502, 510-11 (Okla.1993); Mahan v. Dunkleman, 205 Okla. 54, 234 P.2d 366, 370 (1951). Thus, the only way the district court could have found prior to trial that a fiduciary relationship existed "as a matter of law" would be to find that there was no genuine issue of material fact concerning the existence of a fiduciary duty, thus entitling Quinlan to summary judgment. See Fed.R.Civ.P. 56(c). Although Quinlan never moved for summary judgment on this issue, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also Durtsche v. American Colloid Co., 958 F.2d 1007, 1009 n. 1 (10th Cir.1992). The district court, however, failed to notify Koch of its intention to grant summary judgment in favor of Quinlan on this issue, thereby denying Koch of the opportunity to come forward with evidence demonstrating the existence of a genuine issue of material fact. Under these circumstances, the court committed reversible error in finding a fiduciary relationship as a matter of law. See Jackson v. Integra Inc., 952 F.2d 1260, 1261. (10th Cir.1991).
 
 
 19
 Although the court erred in granting summary judgment in favor of Quinlan, the district court properly denied Koch's motion to dismiss for failure to state a claim on the fiduciary duty issue. Under Oklahoma law, "a fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation." Lowrance v. Patton, 710 P.2d 108, 112 (Okla.1985) (emphasis added). Fiduciary relationships are not limited to any specific legal relationship, but can arise "anytime the facts and circumstances surrounding a relationship 'would allow a reasonably prudent person to repose confidence in another person.' " Devery Implement, 944 F.2d at 730 (quoting In re Estate of Beal, 769 P.2d 150, 155 (Okla.1989), and discussing applicability of a fiduciary duty to a contractual relationship under Oklahoma law); see also Lowrance, 710 P.2d at 111-12. Thus, Oklahoma law would recognize a fiduciary duty arising out of a commercial contract if the transaction involved facts and circumstances indicative of the imposition of trust and confidence, rather than facts and circumstances indicative of an arms length commercial contract. See Devery Implement, 944 F.2d at 730. Because it was possible for Quinlan to prove facts entitling him to relief--i.e., by proving an express or implied agreement between himself and Koch to enter into a relationship of trust and confidence--Quinlan properly alleged a claim upon which relief could be granted. Thus, whether a fiduciary duty existed becomes either an issue for the jury or a question for the district court to resolve on motion for summary judgment, after proper notice to the parties, if no dispute as to a material fact existed.
 
 IV.
 
 20
 Koch argues that the district court should not have submitted the issue of punitive damages to the jury because, under Oklahoma law, punitive damages cannot be awarded in actions based on contract. See Okla.Stat. tit. 23, Sec. 9.[7] Koch asserts that because the existence of a fiduciary duty depends on an agreement between the parties, see supra part III; Lowrance v. Patton, 710 P.2d 108, 112 (Okla.1985), it arises from contract and is not subject to punitive damages. Because this issue is likely to recur on remand, we address it here. See United States v. Sullivan, 919 F.2d 1403, 1421 (10th Cir.1990), cert. denied, --- U.S. ----, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992), and cert. denied, --- U.S. ----, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993). We review de novo. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991) (state law issues are subject to de novo review).
 
 
 21
 We agree with Koch that Oklahoma law precludes the recovery of punitive damages where the "gravamen of plaintiff's action is for breach of an obligation arising from contract." See Burton v. Juzwik, 524 P.2d 16, 20 (Okla.1974); see also Okla.Stat. tit. 23, Sec. 9; Fretwell v. Protection Alarm Co., 764 P.2d 149, 151 (Okla.1988). Under Oklahoma law, however, an action for breach of fiduciary duty when the fiduciary duty arises from contract can be based either on tort or contract. See Panama Processes, S.A. v. Cities Service Co., 796 P.2d 276, 289 n. 55 (Okla.1990); Hall Jones Oil Corp. v. Claro, 459 P.2d 858, 861-62 (Okla.1969). This is because a contract can be the mere incident creating the relation which furnishes the occasion for the tort. Hall Jones Oil, 459 P.2d at 861-2. When a breach of fiduciary duty arises from a contract, the injured party can choose whether to sue for breach of contract or for tort. Panama Processes, 796 P.2d at 289 n. 55; Hall Jones Oil, 459 P.2d at 861-2. Because Quinlan abandoned his contract claims in favor of an action for breach of fiduciary duty, making the "gravamen" of Quinlan's claim against Koch one for tort rather than contract, the issue of punitive damages may be presented to the jury on remand, assuming Quinlan submits sufficient evidence on the issue. See McConnell v. Oklahoma Gas & Elec. Co., 530 P.2d 127, 129 (Okla.1974) (when party permissibly elects to sue in tort rather than contract, punitive damages can be recovered under Okla.Stat. tit. 23, Sec. 9).[8]
 
 V.
 
 22
 Quinlan, in his cross-appeal, asserts that he is entitled to attorney fees as a prevailing party under Okla.Stat. tit. 52, Sec. 540. In response, Koch asserts that Quinlan waived this issue below by failing to submit a claim for attorney fees pursuant to Sec. 540 E. We agree.
 
 
 23
 In his brief in support of his motion for summary judgment on the Sec. 540 interest issue, Quinlan requested attorney fees pursuant to Sec. 540 E. In its summary judgment order, the district court denied the attorney fees request as "premature." Later, in his post-trial application for attorney fees, Quinlan failed to reassert his right to attorney fees pursuant to Sec. 540, and instead requested attorney fees pursuant to Okla.Stat. tit. 12, Sec. 936 exclusively. In its attorney fee order, the district court addressed only the Sec. 936 request. Thus, Quinlan's failure to reassert a claim for fees pursuant to Sec. 540,[9] after the trial court had rejected his pre-trial Sec. 540 claim as premature, constituted waiver of his right to assert a claim for fees pursuant to Sec. 540 on appeal.[10]
 
 
 24
 We AFFIRM the district court's holding that Quinlan is entitled to twelve percent interest, and we AFFIRM the district court's denial of Quinlan's request for attorney fees. However, we REVERSE the district court's holding that the compounding provision of Sec. 540 D is retroactive, we REVERSE the district court's holding that Koch owed Quinlan a fiduciary duty as a matter of law, and we REMAND to the district court for recalculation of the interest Koch owes Quinlan pursuant to Sec. 540 D and for a new trial on the fiduciary duty issue.
 
 
 
 *
 The Honorable John L. Kane, United States District Judge for the District of Colorado, sitting by designation
 
 
 *
 The Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation
 
 
 [1]
 Payments suspended between 1971 and 1973 in the amount of $259.51 were paid to Quinlan in November 1990 and had apparently been excluded from the January payment due to a clerical error
 
 
 [2]
 In 1992, Okla.Stat. tit. 52, Sec. 540 was re-numbered and codified at Okla.Stat. tit. 52, Sec. 570.10. Because this action predated the recodification, we will cite to Sec. 540 rather than Sec. 570.10
 
 
 [3]
 Quinlan requested the interest only from July 1, 1980, which was the effective date of Okla.Stat. tit. 52, Sec. 540
 
 
 [4]
 Section 540 provides in relevant part:
 A. The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six (6) months after the date of first sale, and thereafter no later than sixty (60) days after the end of the calendar month within which subsequent production is sold.... [I]n those instances where such proceeds cannot be paid because the title there to is not marketable, the purchasers of such production shall cause all proceeds due such interest to earn interest at the rate of six percent (6%) per annum to be compounded annually, calculated from the date of first sale, until such time as the title to such interest has been perfected....
 ....
 D. Any said first purchasers or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the date of first sale.
 (emphasis added).
 
 
 [5]
 Because we hold that Koch violated Sec. 540 and thus Quinlan was entitled to twelve percent interest, we need not address Koch's additional argument that Quinlan was not entitled to six percent interest under Sec. 540 A
 
 
 [6]
 Quinlan cites Maxwell v. Samson Resources Co., 848 P.2d 1166, 1171 (Okla.1993), to support his assertion that the 1989 amendment should be applied retroactively. However, in Maxwell, the defendant oil company did not take issue with the compounding of interest pursuant to Sec. 540, but instead, only objected to the trial court's compounding of interest monthly rather than annually as the statute required. See id. (emphasis added). Thus, because the retroactivity of Sec. 540 was not at issue in Maxwell, the Maxwell decision is of no assistance in this case
 
 
 [7]
 Okla.Stat. tit. 23, Sec. 9 provides in relevant part:
 In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded....
 
 
 [8]
 Koch raises a number of objections to jury instructions given by or refused to be given by the district court and also objects to the courts admission of evidence regarding Koch's decision not to report its suspense monies to the state of Oklahoma pursuant to Oklahoma's Unclaimed Property Act. While we have the authority to address issues which are likely to recur, we decline to do so as to these issues because the circumstances at retrial could differ in many respects. Sullivan, 919 F.2d at 1421
 
 
 [9]
 Quinlan argues that by citing Sec. 540 in his post-trial application for attorney fees, he impliedly reasserted his Sec. 540 fee request. We disagree. The only mention of Sec. 540 in his fee application was as follows: "In May of 1991, the Court granted Plaintiff Summary Judgment upon his first cause of action for interest as provided by Title 52, O.S. Sec. 540." (Appellant's App. 586). It is not possible to construe this sentence as a request for fees, either implied or otherwise
 
 
 [10]
 Because we have reversed and remanded for trial on the fiduciary duty issue, we do not address Quinlan's claim that the district court erred in reducing the amount of punitive damages