In re **TULSA ENERGY, INC.,** Debtor.

**TULSA ENERGY, INC.,** Plaintiff,

v.

**OKLAHOMA OIL & GAS MANAGEMENT, INC.; KPL Production Company; Dalco Petroleum, Inc.; Dynex Energy, Inc.; Dalco Fifth Geostratic Limited Partnership; Associated Transport and Trading; Total Petroleum, Inc.; and Trident NGL, Inc.,** Defendants.

Bankruptcy No. 92–00803–C.
Adv. No. 93–0240–C.

United States Bankruptcy Court,
N.D. Oklahoma.

March 24, 1995.

545

---

Charles Greenough, Tulsa, OK, for plaintiff.

William P. Warden, Conner L. Helms, Michael J. Novotny, Linn & Helms, James M. Chaney, Virginia Hunt, Thomas J. Daniel, Kirk & Chaney, Oklahoma City, OK, Malcolm E. Rosser, IV, Jeffrey T. Hills, Crowe & Dunlevy, Jeffrey T. Hills, Tulsa, OK, D. Kenyon Williams, Skiatook, OK, R. Brent Blackstock, Frank D. Spiegelberg, Boesche, McDermott & Eskridge, Tulsa, OK, for defendants.

Gary McDonald, Steven K. Metcalf, Doerner, Saunders, Daniel & Anderson, Tulsa, OK.

Lee I. Levinson, Tulsa, OK.

Ronald L. Ripley, Linn & Neville, Oklahoma City, OK.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon the amended complaint filed herein by Tulsa Energy, Inc. ("Tulsa Energy") against KPL Production Company ("KPL"), Dalco Petroleum ("Dalco"), and Dynex Energy, Inc. ("Dynex Energy"), among others. The parties have filed stipulated facts and briefs on the issues. Upon review of the evidence and the applicable law, the Court finds as follows:

### Procedural Background

Tulsa Energy filed its voluntary petition under Chapter 7 of the Bankruptcy Code on March 11, 1992. On August 19, 1993, Tulsa Energy filed this adversary proceeding. In its amended complaint, filed on August 26, 1993, Tulsa Energy sought turnover of suspended revenue from certain oil and gas production and interest thereon from KPL, operator of the wells. In addition, Tulsa Energy requested that this Court determine the rights and interests of Tulsa Energy, Dalco, Dynex Energy, and Dynex Properties, Inc. (not a party to this litigation) (collectively, the "Settling Parties") in the oil and gas production. The Settling Parties have agreed on the determination of their respective interests in the oil and gas production.[1] The only issue remaining is whether KPL must pay interest on the suspended revenues and, if so, what rate of interest applies.

### Statement of Facts

Dalco has owned a working interest in certain oil and gas wells (the "Wells")[2] since May 1984. Dalco assigned some of its interest in the Wells to Dynex. On June 19, 1992, Dalco assigned its interest in the Wells to Tulsa Energy.

In early 1984, Dalco and Dynex Energy became involved in a dispute with regard to their respective interests in the Major # 1 well. KPL received notice of the dispute and suspended revenues beginning with May 1984 production. On October 11, 1990, Dalco requested that KPL suspend one-half of the revenues of Dynex Energy in the King, Lankard, Elmer, and Ernest wells. Dalco notified KPL that the revenues should be suspended pending execution of division and/or transfer orders reflecting a change in the payout status of these wells.

KPL suspended all revenues of Dalco and Dynex Energy in the King, Lankard, Elmer, and Earnest wells pending execution of appropriate documents. To date, KPL has received no executed division or transfer orders from Dalco, Dynex, or Tulsa Energy.

On August 10, 1994, KPL paid the suspended revenues in the amount of $80,354.70 into the Court. KPL did not pay any interest on the suspended revenues.

### Conclusions of Law

 The principal issue before the Court is whether KPL must pay interest on the suspended revenues. Oklahoma's Production Revenue Standards Act provides as follows:

Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, *that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually,* calculated from the end of the month in which such production is sold until the day paid.

2. a. Where such proceeds are not paid because the title thereto is not marketable, *such proceeds shall earn interest at the rate of six percent (6%) per annum to be compounded annually,* calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable. Marketability of title shall be determined in accordance with the then current title

---

1. *See* Joint Motion For Approval Of Compromise And Settlement Agreement Between Tulsa Energy, Inc., Dalco Petroleum, Inc., Dynex Properties, Inc. And Dynex Energy, Inc. filed herein.

2. The oil and gas wells are designated as follows:

| Major # 1 | NE/4 Sec. 25–T17N–R9W |
|---|---|
| Lankard # 1 | NE/4 Sec. 17–T15N–R6W |
| Elmer # 1 | NE/4 Sec. 13–T16N–R7W |
| Ernest # 1 | NE/4 Sec. 17–T16N–R7W |
| Walter # 1 | NW/4 Sec. 26–T17N–R8W |
| King # 1 | SW/4 Sec. 18–T17N–R8W |

examination standards of the Oklahoma Bar Association.

52 O.S.Supp.1993, § 570.10 (emphasis added) (hereinafter the "Production Revenue Standards Act" or the "Act").[3] The Act provides that if proceeds from oil and gas production are not paid within a specified time, interest must be paid on the proceeds at the rate of twelve percent (12%) per annum. However, the Act further provides that if title to the oil and gas production is not marketable, interest shall be paid at the rate of six percent (6%) per annum.

■ The Act provides that "[m]arketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association."[4] While there are no Oklahoma cases which further define marketability under the Act,[5] this Court finds that title to the oil and gas production in this case was not marketable. Dalco and Dynex have had an ongoing dispute over their interests in the proceeds of the Wells since 1984. The stipulation of facts filed herein as well as the joint motion filed by the Settling Parties contain numerous references to the ongoing dispute regarding the ownership of the oil and gas production.[6] This Court holds that if the owners of a working interest cannot agree as to how the revenues should be divided, the title to the working interest is not marketable. This Court can cite no authority to support its holding, but it seems self-evident. Therefore, the statute requires that KPL pay interest on the suspended revenues at the rate of six percent (6%) per annum.

KPL has raised several defenses to its obligation to pay interest on the oil and gas production. The first defense raised by KPL concerns the division orders. In 1984, Dalco and Dynex Energy executed division orders on all the Wells.[7] KPL contends that Dalco and Dynex Energy are bound by the language in the division orders which provides that if a dispute arises concerning title, unless such dispute is resolved to KPL's satisfaction, KPL may withhold proceeds without interest. The Court disagrees with KPL's reasoning.

---

3. In 1984, the statute provided in pertinent part as follows:

A. The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six (6) months after the date of first sale, and thereafter no later than sixty (60) days after the end of the calendar month within which subsequent production is sold.... Provided, however, that in those instances *where such proceeds cannot be paid because the title thereto is not marketable, the purchasers of such production shall cause all proceeds due such interest to earn interest at the rate of six percent (6%) per annum,* until such time as the title to such interest has been perfected ...

B. Any said first purchasers or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this section *shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum ...*

52 O.S. 1981, § 540 (emphasis added).

4. Standard 4.1 of the Title Examination Standards provides:

All title examinations should be made on the basis of marketability as defined by the Supreme Court, to-wit: "A marketable or merchantable title is synonymous with a perfect title or clear title of record; and is one free from apparent defects, grave doubts and litigious uncertainty, and consists of both legal and equitable title fairly deducible of record."

5. The United States Court of Appeals for the Tenth Circuit discussed marketability under the Oklahoma Revenue Production Standards Act in *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 939–40 (10th Cir.1994). However, the Court concluded that "the marketability of Quinlan's title was not legitimately in question at the time of unitization."

6. *See* Stipulated Facts and Joint Motion For Approval Of Compromise And Settlement Agreement Between Tulsa Energy, Inc., Dalco Petroleum, Inc., Dynex Properties, Inc. And Dynex Energy, Inc.

7. The division orders provide, in part, as follows:

In the event any dispute or question arises concerning the title of Owner to the Property and/or the oil or gas produced therefrom or the proceeds thereof, you will be furnished evidence of title satisfactory to you upon demand. Until such evidence of title has been furnished and/or such dispute or question of title is corrected or removed to your satisfaction, or until indemnity satisfactory to you has been furnished, you are authorized to withhold the proceeds of such oil or gas received and run, *without interest.*

Oil and Gas Division Order, dated April 4, 1984 (emphasis added).

■ The language of the Production Revenue Standards Act providing for payment of interest on suspended revenues is mandatory. Contracts or portions thereof in derogation of statutes will not be enforced by Courts. 15 O.S.1993, § 211; *Dycus v. Belco Industries, Inc.,* 569 P.2d 553, 556 (Okla.Ct. App.1977); *see An–Cor, Inc. v. Reherman,* 835 P.2d 93, 95–96 (Okla.1992); *Hamilton v. Cash,* 185 Okla. 249, 91 P.2d 80, 81 (1939). The division order which provides for suspension of proceeds without payment of interest is in derogation of the Production Revenue Standards Act and, therefore, will not be enforced by this Court.

■ KPL has also raised the statute of limitations as a defense to its liability for interest on the suspended revenue. The Court finds that the statute of limitations does not bar Tulsa Energy's claim for interest on the suspended revenues.

■ Prior to September 1, 1992, the statute of limitations applicable to the Production Revenue Standards Act was determined by 12 O.S. § 95 (Second) which provides a three-year limitation for actions created by statutes. After September 1, 1992, the Act was amended to create a limitation period of five years. 52 O.S.Supp.1993, § 570.14(D). The amendment specifically stated that it did not apply "to production occurring prior to September 1, 1992." Accordingly, the statute of limitations applicable to the Act is three years for production occurring prior to September 1, 1992 and five years for production occurring after September 1, 1992.

■ Generally, the statute of limitations on a claim begins to run when a cause of action accrues. The accrual of a cause of action occurs at the time that plaintiff could have first maintained the action successfully. *Sherwood Forest No. 2 Corp. v. City of Norman,* 632 P.2d 368, 370 (Okla.1980). The Production Revenue Standards Act provides that the operator shall pay interest on suspended revenues. KPL had no duty to pay the proceeds of the oil and gas production until the title thereto became marketable. In this case, the Court finds that the cause of action accrued when the title became marketable. This occurred when the settling parties agreed on their respective interests in the proceeds of the oil and gas production. At that time, KPL had a duty to pay the proceeds, the working interest owners had a right to receive the proceeds, and the statute of limitations began to run. Therefore, the statute of limitations began to run on March 3, 1995 or thereafter when curative documents were executed and it has not yet expired.

A separate judgment order will be entered consistent with this Memorandum Opinion ordering KPL to pay interest on the suspended proceeds in the amount of six percent (6%) per annum. The interest should be calculated as simple interest prior to July 1, 1989 and compounded annually after that date.[8] If the parties are unable to agree upon the mathematical calculations to arrive at this amount, the Court will hold a hearing to do so.

8. *Quinlan v. Koch Oil Co.,* 25 F.3d 936, 940–41 (10th Cir.1994).