131 F.Supp.2d 1230 (2001)
In re COOPER MANUFACTURING CORP., and its Affiliates; Challenger Rig & Manufacturing, Inc.; Cooper Offshore Systems, Inc.; and Cooper Sales Corp., Debtors.
Jon A. Barton, Liquidating Trustee, Plaintiff,
v.
The Home Indemnity Company; et al., Defendants.
The Home Indemnity Company, Third-Party Plaintiff,
v.
The Holmes Organisation, Inc.;, and Kent A. Bogart, Third-Party Defendants.
Nos. 84-01061-W, 94-C-901-BU. Adv. No. 94-0282-W.
United States District Court, N.D. Oklahoma.
February 7, 2001.
*1231 William Robert Grimm, J Patrick Mensching, Jr., William Brad Heckenkemper, Barrow Gaddis Griffith & Grimm, Tulsa, OK, Burton J Johnson, Bradley Kent Donnell, Looney Nichols & Johnson, Oklahoma City, OK, Neil J Dilloff, Brett Ingerman, Catherine M. Simmons, Piper Marbury Rudnick & Wolfe, LLP, Baltimore, MD, Stephen R Mysliwiec Piper & Marbury, Washington, DC, Katresa J Riffel, Gungoll Jackson Collins & Box, PC, Enid, OK, for Home Ins. Indem. Co.
Thomas G Wolfe, Raymond Edward Zschiesche, Gerard F. Pignato, Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, OK, Robert E Manchester, Shannon K Emmons, Raymond Thompson Cooper, Manchester & Pignato, Oklahoma City, OK, for Holmes Organisation, Inc.
Steven Ernest Holden, Bruce Alvin McKenna, Stephen J Capron, Holden Glendening & McKenna, Tulsa, OK, for Kent A. Bogart.

ORDER
BURRAGE, District Judge.
On June 2, 2000, United States Magistrate Judge Sam A. Joyner issued a Report and Recommendation, wherein he recommended that Third-Party Defendant, The Holmes Organisation, Inc.'s motion to dismiss Counts III and IV of the Second Amended Third-Party Complaint be denied.
Presently before the Court is the objection of Third-Party Defendant, Kent A. Bogart, to the Report and Recommendation.[1] Pursuant to 28 U.S.C. § 636(b), the Court has conducted a de novo review of the matter. Having done so, the Court finds that the objection is without merit. The Court accepts the Report and Recommendation in its entirety.
Accordingly, the Report and Recommendation issued by United States Magistrate Judge Sam A. Joyner (Docket Entry # 323) is AFFIRMED. Third-Party Defendant, The Holmes Organisation, Inc.'s Motion to Dismiss The Home Indemnity Company's Second Amended Third-Party Complaint (Docket Entry # 271) is DENIED.

REPORT AND RECOMMENDATION
JOYNER, United States Magistrate Judge.
The Holmes Organisation, Inc.'s ("Holmes") motion to dismiss is now before the Court. [Doc. No. 271]. Holmes' motion has been referred to the undersigned for a Report and a recommendation pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 72. The undersigned heard oral argument on Holmes' motion at a hearing on May 15, 2000. With its motion, Holmes seeks dismissal of Counts III and IV in Plaintiff's Second Amended Third-Party Complaint. [Doc. No. 260]. For the reasons discussed below, the undersigned recommends that Holmes' motion to dismiss be DENIED.

I. RULE 12(b)(6) MOTION TO DISMISS OR RULE 56 MOTION FOR SUMMARY JUDGMENT?
Holmes has titled its motion a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, attached to the motion are four documents which are not part of the Second Amended Third-Party Complaint, and in the motion Holmes lists five facts which it alleges are undisputed. In response to Holmes' motion, Home understandably *1232 noted its confusion as to whether Holmes' motion was a Rule 12(b)(6) motion to dismiss or in fact a Fed.R.Civ.P. 56 motion for summary judgment. Consequently, Home responded by attaching four exhibits of its own, which also contained material not in the Second Amended Third-Party Complaint. In its reply brief, Holmes reaffirmed its desire to have its motion treated as a motion to dismiss and not a motion for summary judgment. Inexplicably, Holmes then proceeded to attach six more exhibits to its reply brief for the Court's consideration. The undersigned is, therefore, as confused as Home regarding the true nature of the motion Holmes has filed.
Holmes insists that its motion is a motion to dismiss and should be treated as such. The undersigned will, therefore, permit Holmes to be the master of its own motion, and treat the motion as a motion to dismiss under Rule 12(b)(6). The undersigned will, therefore, examine the allegations in Horne's Second Amended Third-Party Complaint to determine whether, taken as true, they state a cause of action against Holmes. Consequently, the undersigned will ignore the evidentiary materials attached to the parties' briefs, except to the extent that they establish the termination of the agency agreement between Home and Holmes on April 7, 1988  a fact which is undisputed and which can be inferred from the Second Amended Third-Party Complaint.

II. RULE 12(b)(6) STANDARDS
The purpose of a motion to dismiss is to test the sufficiency of the complaint under Fed.R.Civ.P. 8, not decide the merits of a case. Dismissal of a cause of action for failure to state a claim is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of its theory of recovery or where an issue of law is dispositive. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Fuller v. Norton, 86 F.3d 1016, 1020 (10th Cir.1996). All wellpled facts in the pleadings, as opposed to conclusory allegations, are to be accepted as true. The pleadings are to be liberally construed, and all reasonable inferences which can be drawn from the well-pled facts are to be viewed in favor of the plaintiff. Jojola v. Chavez, 55 F.3d 488, 494 n. 8 (10th Cir.1995). The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

III. SUMMARY OF WELL-PLED FACTS IN HOME'S SECOND AMENDED THIRD-PARTY COMPLAINT
The parties and Court are directed to the Report and Recommendation filed by the undersigned in connection with Holmes' motion for summary judgment on Counts I and II of Home's Second Amended Third-Party Complaint for a detailed description of this litigation's history. The undersigned will not rehash that history here. Rather, the undersigned will summarize Home's well-pled allegations as they relate to Counts III and VI of its Second Amended Third-Party Complaint.
Home is a New Hampshire corporation in the business of underwriting insurance policies. Holmes is an Oklahoma corporation in business as a broker for the purchase and sale of insurance policies. Holmes was an authorized broker/agent for Home. Holmes acted as Home's agent in connection with the sale, payment, performance, cancellation and other matters regarding insurance policies written by Home in Oklahoma.
At all relevant times, Kent A. Bogart was the president of Holmes. Beginning in 1979, Holmes became an insurance agent for Cooper Manufacturing Corporation ("Cooper"), providing Cooper with insurance coverage from Home. As Cooper's agent, Holmes routinely received notices and demands from Cooper and transmitted them to Home in connection with Cooper's insurance policies.
*1233 As a result of defective steel used to manufacture its workover rigs, Cooper found itself facing many product liability lawsuits. Cooper eventually filed for bankruptcy and was liquidated. In September 1994, during its bankruptcy, Cooper filed an adversary proceeding against Home. Cooper asserted claims for common law bad faith and violations of the Texas Insurance Code. Cooper alleged that Home's failure to investigate and defend Cooper with regard to the claims resulting from the defective rigs forced Cooper into bankruptcy and caused Cooper's death as a company. Cooper also alleged that once Home actually began to defend Cooper, Home committed several acts of bad faith. As damages for its "death of the company" claim Cooper sought $55 million to $86 million in damages, which were subject to trebling, prejudgment interest, and punitive damages.
Home alleges that but for Mr. Bogart's conduct as Holmes' president, Home would have had an affirmative defense to Cooper's claim that Home's failure to defend Cooper caused Cooper's bankruptcy, liquidation and death. Home initially defended against Cooper's claim by arguing that Home never had a duty to defend Cooper because Cooper never tendered any defective rig claims to Home for defense. In response, Cooper argued that Home was estopped from asserting a "no tender" defense because Mr. Bogart, acting as Home's agent, had previously told Cooper that Cooper's policies with Home did not provide coverage for the claims being asserted against Cooper for its use of defective steel in its workover rigs. Cooper argued that the reason it never tendered any claims to Home was because of Mr. Bogart's "no coverage" opinion.
Cooper alleged that Mr. Bogart rendered his "no coverage" opinion to Mr. Hug, Cooper's CFO, at a pre-bankruptcy meeting on May 18, 1984 at which Mr. Hug and Mr. Bogart discussed Cooper's defective steel problems. Cooper also alleged that Mr. Bogart confirmed his "no coverage" opinion in subsequent conversations he had with Mr. Barton, Cooper's president. What was or was not said by Mr. Bogart at the May 18th meeting is disputed, and it is the alleged evolution of Mr. Bogart's testimony about what happened at this meeting which forms the basis of the claims Home has alleged in Counts III and IV of its Second Amended Third-Party Complaint.
Before Cooper filed its bad faith case against Home, it had filed a "coverage" case against Home in the bankruptcy court to determine whether any policies issued by Home covered any of the claims being asserted against Cooper as a result of the defective steel Cooper had used in its rigs. Mr. Bogart gave his deposition in the coverage case on July 5, 1994 and he testified at the trial of the coverage case on February 14, 1995. Home alleges that in the later-filed bad faith case, it relied on this testimony from Mr. Bogart in the coverage case when it determined that it should settle with Cooper for $7.5 million because Home would loose on its affirmative "no tender" defense.
Home alleges that in his deposition and at the trial of the coverage action, Mr. Hug, Cooper's CFO, testified that he remembered having a lengthy conversation with Mr. Bogart in May 1984 and that during the meeting Mr. Bogart told him that there was no coverage under the Home policies. Home also alleges that Mr. Barton, Cooper's president, testified during the trial of the coverage case that he had himself spoken directly to Mr. Bogart and that Mr. Bogart confirmed his statement to Mr. Hug that there was no coverage.
Home alleges that Mr. Bogart's deposition testimony and trial testimony in the coverage case "was characterized by a persistent asserted lack of memory and a continual deference to Mr. Hug's account of the May 18, 1984 events." Doc. No. 260, ¶ 14. When asked whether he and Mr. Hug ever discussed coverage under the Home policies, Mr. Bogart testified as follows: "I am sure we had discussions of that type, but I cannot recall when and *1234 where and the crux of the exact discussion. I can't recall that." Id. at ¶ 16. Home alleges that "[i]n reliance on Mr. Bogart's testimony that he lacked memory of the May 18, 1984 events and his continual deference to Mr. Hug's account of those events, Home believed it had no factual defense to [Cooper's estoppel argument]." Id. at 22. Home proceeded, therefore, to settle with Cooper for $7.5 million.
Home then filed this action against Holmes, originally asserting only indemnity and contribution claims against Holmes. During discovery on its indemnity and contribution claims, Home took Mr. Bogart's deposition on November 15, 1999. Home makes the following allegations as a result of the testimony Mr. Bogart gave in November 1999:
At [his November 1999] deposition, Mr. Bogart no longer suffered from lack of memory regarding the events occurring on or about May 18, 1984. Nor did he now defer to Mr. Hug's account of those events. Mr. Bogart testified that, even though his November 15, 1999 deposition was taken over five years after his July 5, 1994 deposition and over four and a half years after his February 14, 1995 testimony in the coverage case ... he now had a much clearer recollection of the events of May 1984 than he did either in July 1984 or February 1995.
....
[At his November 1999 deposition], Mr. Bogart unequivocally contradicted and rejected Mr. Hug's testimony that Mr. Bogart had given Mr. Hug an opinion that there was no coverage under the Home policies ....
Mr. Bogart further testified in his November 1999 deposition that his memory of the May 18, 1984 events had first been refreshed when he received a telephone call from Mr. Hug after Mr. Bogart's testimony in the coverage case in February 1995 [and before Home had settled with Cooper for $7.5 million]. Mr. Bogart testified that, during this telephone conversation, Mr. Bogart and Mr. Hug discussed the May 18, 1984 events and Mr. Bogart's memory became clear regarding them. This refreshing of Mr. Bogart's memory rendered his July 1994 deposition testimony and February 1995 trial testimony materially inaccurate and misleading in respects that were directly relevant to ... whether The Holmes Organisation, through Mr. Bogart, had given a nocoverage opinion to Cooper on or about May 18, 1984. Mr. Bogart nonetheless never informed Home of his telephone conversation with Mr. Hug and Mr. Bogart's newly refreshed memory.... Home was thus deprived, when it settled with [Cooper], of this factual defense to [Cooper's] estoppel argument.
Doc. No. 260, ¶¶ 29-31.
Based on the alleged evolution of Mr. Bogart's testimony, Home asserts the following claims against Holmes in its Second Amended Third-Party Complaint:
Count III (Breach of Fiduciary Duty)  Home alleges that Holmes, as Home's agent, owed Home an agent's duty of care and loyalty, including the duty to give Home information relevant to the subject matter of the agency. Home alleges that Holmes breached this fiduciary duty to Home when it failed to inform Home about Mr. Bogart's telephone conversation with Mr. Hug and the consequent "refreshing" of Mr. Bogart's memory regarding the events of May 18, 1984. Home alleges that had Holmes timely informed Home of Mr. Bogart's refreshed memory, Home would have had a factual defense to Cooper's estoppel argument and it would either not have settled with Cooper or not have settled for $7.5 million. Count IV (Negligence)  Home alleges that given (a) the magnitude and nature of its exposure to Cooper, (b) Cooper's reliance on the fact that Mr. Bogart had allegedly given a no-coverage opinion, and (c) the fact that Holmes knew or should have known that the refreshing of Mr. Bogart's memory rendered his prior testimony inaccurate and misleading, Holmes had a duty to inform Home *1235 about Mr. Bogart's conversation with Mr. Hug and Mr. Bogart's refreshed memory regarding the events of May 18, 1984. Home alleges that Holmes breached this duty by failing to notify Home of Mr. Hug's conversation and Mr. Bogart's refreshed memory. Home alleges that Holmes is liable to Home in tort for any damages resulting from this breach of duty.
Holmes moves to dismiss Home's breach of fiduciary duty claim, arguing that the agency relationship between Home and Holmes was terminated on April 7, 1988, seven years before Mr. Bogart spoke with Mr. Hug and his memory was allegedly refreshed. Holmes argues, therefore, that at the time Mr. Bogart's memory was allegedly refreshed, it owed no fiduciary duties as an agent to Home. Holmes moves to dismiss Home's negligence claim, arguing that the claim accrued on the date Home settled with Cooper and that the claim is now barred by the two year statute of limitations.

IV. COUNT III  HOME HAS PLED FACTS SUFFICIENT TO STATE A BREACH OF FIDUCIARY DUTY CLAIM AGAINST HOLMES.
The agency agreement between Home and Holmes terminated on April 7, 1988. Home alleges that Mr. Bogart's memory was refreshed some seven years later when he had a conversation with Mr. Hug sometime after February 14, 1995  the date Mr. Bogart testified in the coverage action. Holmes argues that Home's breach of fiduciary duty claim should be dismissed because, as a matter of law, Holmes owed Home no fiduciary duties after the termination of the agency agreement between them.
In Quinlan, the Tenth Circuit warned district courts not to resolve fiduciary duty questions as strict questions of law. In fact, the Tenth Circuit specifically held that "[u]nder Oklahoma law, the existence of a fiduciary relationship is a question of fact which must be proven by the party asserting the relationship." Quinlan v. Koch Oil Co., 25 F.3d 936, 942 (10th Cir.1994). The existence or non-existence of a fiduciary duty depends on the factual circumstances surrounding the parties' relationship and transactions. First Nat'l Bank and Trust Co. of Vinita v. Kissee, 859 P.2d 502, 510-11 (Okla.1993). A fiduciary relationship includes all legal relationships "such as guardian and ward, attorney and client, principal and agent and the like ...." Lowrance v. Patton, 710 P.2d 108, 111 (Okla.1985). Fiduciary relationships are not, however, limited to specific legal relationships. The relationship may be legal, "moral, social, domestic or merely personal." Id. at 111-12. Under Oklahoma law, a fiduciary relationship arises anytime the facts and circumstances surrounding a relationship would allow a reasonably prudent person to repose confidence and trust in another person. Id. at 111; In re Estate of Beal, 769 P.2d 150, 155 (Okla.1989); Panama Processes, S.A. v. Cities Service Co., 796 P.2d 276, 290 (Okla.1990); Quinlan, 25 F.3d at 942. "[A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either express or implied, from which it can be said the minds have been met to create a mutual obligation." Quinlan, 25 F.3d at 942 (emphasis original) (quoting from Lowrance, 710 P.2d at 112). As the Oklahoma Supreme Court recognized in Beal, in each case where it has recognized a fiduciary duty, the Court has "looked at the facts and found a relationship which would allow a reasonably prudent person to repose confidence in the other." Beal, 769 P.2d at 155.
The question presented by Holmes' motion to dismiss is whether it appears beyond doubt that Home can prove no set of facts which would establish the existence of a fiduciary duty by Holmes after the termination of the parties' formal agency relationship. In light of Quinlan, the undersigned is reluctant at the motion to dismiss stage to find that Home will be *1236 completely unable, given the allegations in its complaint, to prove facts which would establish a post-"agency agreement" relationship between itself and Holmes which would have permitted a reasonably prudent person in Home's position to repose confidence in Holmes and rely on Holmes to report to Home information relevant to matters which arose out of their formal agency relationship. It is for the jury to decide whether, as Holmes argues, it was unreasonable under the facts of this case for Home to trust that Holmes would convey information to Home about matters arising out of the formal agency relationship more than seven years after their formal relationship ended. The undersigned finds, therefore, that Home has stated a claim for breach of fiduciary duty which is sufficient to satisfy Fed.R.Civ.P. 8's requirements and withstand a Rule 12(b)(6) motion to dismiss.
The undersigned's conclusion is supported by the Restatement (Second) of Agency cited by Home and the negligence "duty" cases cited by Holmes. The parties agree with the general rule stated in § 381 of the Restatement (Second) of Agency, which imposes a duty on all agents "to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him ...." The parties disagree, however, as to whether this duty can ever survive the termination of the parties' formal agency relationship. Home cites comment "f" to § 381 in support of an agent's post-termination duty to provide information.
Comment "f" provides as follows:

After termination.... [I]f the agency terminates without the fault of the principal, the agent is under a duty thereafter to give to the principal relevant information received by the agent when acting as such.
Restatement (Second) of Agency, § 381 cmt f. Comment f is not a model of clarity. One reading of the comment, and the one Holmes asserts, is that it only requires an agent to give pre-termination information to a principal post-termination. In other words, Holmes argues that comment f does not require an agent to give information to his former principal which he learns post-termination, even if that post-termination information would be relevant to other information or matters which the agent was involved with pre-termination. The undersigned finds this to be too narrow a reading of comment f. Comment f at least recognizes that under certain circumstances, an agent may have a post-termination duty to give his principal information. This is consistent with the approach to fiduciary duties taken by Oklahoma, which requires an examination of the parties' entire relationship to determine whether a fiduciary duty exists. The end of the parties' formal agency relationship is not necessarily dispositive, which is the only proposition Holmes has asserted in its motion to dismiss.
Holmes cites to several cases where the Oklahoma Supreme Court was called upon in a negligence case to determine whether the defendant owed a duty of care to the plaintiff. These cases hold that "whether or not a duty exists depends on the relationship between the parties and the general risks involved in the common undertaking." Delbrel v. Doenges Bros., Ford, Inc., 913 P.2d 1318, 1320 (Okla.1996). Duty is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Wofford v. Eastern State Hosp., 795 P.2d 516, 519 (Okla. 1990) (citing Prosser, Law on Torts pp. 332-333 (3d ed.1964)). The most important consideration in establishing duty is foreseeability. Delbrel, 913 P.2d at 1321; Wofford, 795 P.2d at 519. "As a general rule, a `defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'" Wofford, 795 P.2d at 519 (citing Tarasoff v. Regents of Univ. of California, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)).
*1237 The undersigned finds that Quinlan, Kissee, Lowrance and Beal, all cited above, are more directly on point regarding the existence of a fiduciary duty than are Delbrel and Wofford which deal with duties in negligence cases. Delbrel and Wofford are, however, consistent with Quinlan, Kissee, Lowrance and Beal. Whether Holmes owed Home a post-termination duty depends on all of the facts and circumstances of their relationship, which includes the fact that the transaction about which Home wishes to impose a duty to inform was ongoing both before and after the termination of the parties' formal agency relationship. If one were to recast the fiduciary duty inquiry in traditional negligence terms, the question would become: Was it foreseeable to Holmes that Home would be relying on Holmes, more than seven years after the termination of their formal agency relationship, to inform Home about Mr. Bogart's allegedly refreshed memory in order to prevent harm to Home in the Cooper litigation? Given the allegations in Home's Second Amended Third-Party Complaint, the undersigned cannot find that all reasonable jurors would have to answer no to this inquiry  a reasonable juror could answer yes. Consequently, Holmes' motion to dismiss must be denied and Home should be given the opportunity to offer evidence in support of its fiduciary duty claim.

IV. COUNT IV  HOME HAS PLED FACTS SUFFICIENT TO STATE A NEGLIGENCE CLAIM AGAINST HOLMES.
The parties agree that the two year statute of limitations in 12 Okla. Stat. § 95(3) applies to Home's negligence claim in Count IV of the Second Amended Third-Party Complaint. The parties also agree that, absent application of some tolling principle, Home's negligence claim accrued more than two years before it filed the Second Amended Third-Party Complaint on March 24, 2000. Home argues that Oklahoma's discovery rule applies to its negligence claim, and that the discovery rule tolled the statute of limitations until November 15, 1999 when Home allegedly learned for the first time at Mr. Bogart's deposition that Mr. Bogart's memory had been "refreshed" by a 1995 phone call from Mr. Hug. Home argues that its negligence claim is timely because it was filed within two years of November 15, 1999  the date when Home first knew of Holmes' alleged negligence.
The "discovery rule" allows statutes of limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. The discovery rule tests the evidence for lack of diligence by the injured party to discover the injury. Holmes does not dispute that Oklahoma's discovery rule is applicable to Home's negligence claim. The undersigned finds, therefore, that the discovery rule is applicable to Home's negligence claim. See McVay v. Rollings Construction, Inc., 820 P.2d 1331, 1332-33 (Okla.1991).
Holmes argues that the discovery rule does not save Home's negligence claim because Home "should have known" about any alleged changes to Mr. Bogart's recollection regarding the events of May 1984 more than two years before Home filed the Second Amended Third-Party Complaint. Holmes then launches into a fact-intensive discussion in an attempt to demonstrate why it is undisputed that Home should have known more than two years before it filed its negligence claim about Mr. Bogart's refreshed memory. Such a factual inquiry is inappropriate at the motion to dismiss stage.
Home alleges in its Second Amended Third-Party Complaint that it was not aware that Mr. Bogart had experienced a refreshing of his memory until it took his deposition in November 1999. Home also argues that there is no reason it should have known prior to Mr. Bogart's deposition that his memory had been refreshed, because Home was entitled to rely on Mr. Bogart's prior sworn testimony without continually asking him if his recollection had changed. Whether the discovery rule applies is a fact intensive question which *1238 will have to be resolved at trial or pursuant to a motion for summary judgment. The undersigned cannot, therefore, find that Home will be unable to prove a set of facts which will entitle it to rely on the discovery rule. The undersigned finds, therefore, that Home has stated a claim for negligence sufficient to satisfy Fed. R.Civ.P. 8's requirements and withstand a Rule 12(b)(6) motion to dismiss.

RECOMMENDATION
Home's Second Amended Third-Party Complaint contains allegations sufficient to state a claim against Holmes under Fed. R.Civ.P. 8 for breach of fiduciary duty and negligence. Consequently, the undersigned recommends that Holmes' motion to dismiss Counts III and IV of Home's Second Amended Third-Party Complaint be DENIED. [Doc. No. 271].

OBJECTIONS
The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. See Moore v. United States, 950 F.2d 656 (10th Cir.1991); and Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.1996).
June 2, 2000.
NOTES
[1] The Court notes that Third-Party Defendant, The Holmes Organisation, Inc., did not file any objection to the Report and Recommendation and filed its answer to the Second Amended Third-Party Complaint on July 20, 2000.