FILED
United States Court of Appeals
Tenth Circuit

December 22, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RANDY COMBS,

      Plaintiff-Appellant/
Cross-Appellee,

v.

SHELTER MUTUAL INSURANCE
COMPANY; SHELTER GENERAL
INSURANCE COMPANY,

      Defendants-Appellees/
Cross-Appellants.

Nos. 07-7042 & 07-7043

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:05-CV-00474-JHP)**

---

Jim T. Priest, Whitten, Nelson, McGuire, Terry & Roselius, Oklahoma City, Oklahoma, for Plaintiff-Appellant/Cross Appellee.

Clyde A. Muchmore (Timila S. Rother, with him on the briefs), Crowe & Dunlevy, Oklahoma City, Oklahoma, for Defendants-Appellees/Cross Appellants.

---

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

      Defendant Insurance Companies employ Plaintiff Randy Combs as an

insurance sales agent. Plaintiff sued Defendants pursuant to Oklahoma law, alleging

various contract and tort claims related to his agency contract. The district court granted summary judgment for Plaintiff on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing. See Fed. R. Civ. P. 56. Subsequently, the district court granted judgment as a matter of law for Defendants as to the remaining claims of fraud/constructive fraud and breach of fiduciary duty. See Fed. R. Civ. P. 50.

Plaintiff appeals alleging the district court committed numerous errors. Defendants cross-appeal alleging the district court erred in granting summary judgment for Plaintiff on the breach of contract and breach of the implied covenant of good faith and fair dealing claims. The parties agree Oklahoma law applies to this diversity case. We have jurisdiction under 28 U.S.C. § 1291. Although our rationale differs from that of the district court, we affirm.

I.

In April 1993, Plaintiff entered an agency agreement (Agreement) with Defendants. Pursuant to this business arrangement, Plaintiff receives a commission for selling policies on behalf of Defendants. Plaintiff is entitled to a bonus commission each year, calculated by the overall "Loss Ratio" on policies he sells. Specifically, the Agreement's bonus provision states "[Plaintiff] may earn bonus commission each calendar year [he] qualif[ies]. [Defendants] will pay [Plaintiff] a percentage of the Total Premium [Defendants] receive on [Plaintiff's] Agent Policies and limited by [Plaintiff's] Loss Ratio for a three year period." The agreement

2

further defines "Loss Ratio" as "the premium [Defendants] earned on [Plaintiff's] Agent Policies divided into the Losses Charged to [Plaintiff's] Agent Policies." "Losses Charged" is defined as "the amount [Defendants] have paid on *claims* and the amount [Defendants] increase or decrease . . . reserves." (emphasis added).

In 2005, Defendants settled a lawsuit with an insured for $450,000. The suit derived from Defendants' alleged bad-faith handling of a claim made on an insurance policy Plaintiff sold. Defendants subsequently included the settlement payment as a portion of the "Losses Charged" to Plaintiff's "Agent Policies." Because Defendants attributed this payment as a "claim" paid on one of Plaintiff's policies, Plaintiff did not qualify for a bonus commission in 2005. Plaintiff filed suit alleging the settlement payment was not a "claim" under the Agreement and should not have been included in his Loss Ratio.

Prior to trial, Plaintiff and Defendants filed cross-motions for summary judgment. In granting Plaintiff's motion in part and denying Defendants' motion, the district court held Defendants were in breach of contract because the application of the settlement payment to Plaintiff's Loss Ratio violated Oklahoma law. The district court relied on Oklahoma case law precluding insured parties from including third-party agents in suits against insurance companies for bad-faith handling of policy claims. Thus, the district court concluded that attributing such bad-faith settlement payments to third-party agents through contract violated Oklahoma public policy. The district court further charged Defendants with constructive knowledge

3

of this Oklahoma law and, therefore, ruled Defendants violated the implied covenant of good faith and fair dealing. Despite Plaintiff's request for punitive damages, the district court limited Plaintiff's recovery on the implied covenant of good faith and fair dealing claim to contract damages.

During trial on Plaintiff's fraud/constructive fraud and breach of fiduciary duty claims, the district court excluded evidence of Defendants' business practices outside Oklahoma. The district court also granted Defendants' motion to exclude Plaintiff's expert witness. At the close of each party's case-in-chief, Defendants moved for judgment as a matter of law. The district court orally granted Defendants' motion, holding (1) Plaintiff did not establish the necessary elements for fraud/constructive fraud by clear and convincing evidence, and (2) Defendants did not owe Plaintiff a fiduciary duty. Thus, the district court refused to submit the fraud/constructive fraud and breach of fiduciary claims to the jury.

Under the breach of contract and breach of the implied covenant of good faith and fair dealing claims, the district court awarded Plaintiff $27,988.00 in contract damages. This amount was based upon Plaintiff's projected bonus commission without the application of Defendants' settlement payment as a "claim" paid on one of Plaintiff's policies. The district court also awarded Plaintiff $14,126.25 in attorney fees. Because attorney fees are not permitted for tort actions under Oklahoma law, the district court apportioned Plaintiff's attorney fees between his tort and contract claims, and limited the award to work performed before the district

4

court granted summary judgment on Plaintiff's breach of contract claim. Both parties appeal. For clarity's sake, we first address Defendants' cross-appeal.

## II.

On cross-appeal, Defendants argue the district court erred in granting summary judgment for Plaintiff on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants assert the Agreement does not violate Oklahoma law and contend the Agreement unambiguously includes bad-faith settlement payments as "claims" charged to an agent's policy. Thus, Defendants request that we reverse the district court and enter summary judgment for Defendants on the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## A.

Relying on Timmons v. Royal Globe Ins. Co., 653 P.2d 907 (Okla. 1982) and its progeny, the district court ruled Defendants' practice of attributing bad-faith settlement payments to agents' loss ratios violated Oklahoma law. In Timmons, the Oklahoma Supreme Court held that a third-party agent was not a party to the contract between an insured and an insurance company. Id. at 912. As such, the insured could not hold a third-party agent liable for an insurance company's breach of its duty of good faith and fair dealing. Id. Because Timmons held this duty owed to the insured was non-delagable, id. at 914, the district court reasoned Defendants could not achieve a similar delegation of this duty by applying a bad-faith settlement

5

payment to a third-party agent's bonus commission. The district court held Defendants' interpretation of the Agreement was contrary to Oklahoma public policy and a breach of contract. Our review of the district court's determination is de novo. See Scrivner v. Sonat Exploration Co., 242 F.3d 1288, 1291 (10th Cir. 2001).

Defendants argue Timmons *only* precluded a cause of action *by an insured against a third-party agent* for breach of the implied good faith duty owed by the insurance company to the insured under an insurance contract. Defendants believe Timmons does not speak to how insurance companies and their agents contract amongst themselves. Defendants' argument relies on general principles of freedom of contract. Under Oklahoma law, "[a]bsent illegality, the parties are free to bargain as they see fit, and the court may neither make a new contract, or rewrite the existing contract." Oxley v. Gen. Atlantic Res., Inc., 936 P.2d 943, 945 (Okla. 1997). Accordingly, courts' "power to void a contract as being in contravention of public policy is delicate and undefined" and may only be exercised "in cases free from doubt." In re Kaufman, 37 P.3d 845, 854 (Okla. 2001); see also Shepard v. Farmers Ins. Co. Inc., 678 P.2d 250, 251 (Okla. 1983) ("Courts will exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt.").

Because we hold the Agreement unambiguously excludes tort payments from the calculation of Plaintiff's Loss Ratio, we need not speculate whether the Oklahoma Supreme Court would find the Agreement at issue violative of Oklahoma

6

public policy.  See Medina v. City and County of Denver, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (citation omitted).  In addition, because Defendants are in breach of contract, we do not decide whether they also breached the implied covenant of good faith and fair dealing owed to Plaintiff.

B.

When interpreting a contract, Oklahoma law requires courts to "consider the entire agreement 'so as to give effect to every part, if reasonably practicable.'" Scrivner, 242 F.3d at 1291 (quoting 15 Okla. Stat. § 157).  Determination of "whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law" for the court.  Otis Elevator Co. v. Midland Red Oak Realty, Inc., 483 F.3d 1095, 1101 (10th Cir. 2007).  An ambiguous contract, however, "is a mixed question of law and fact and should be decided by the jury."  Id.  In determining whether a contract is ambiguous, courts must "construe the words as they are 'understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless special meaning is given to them by usage.'"  Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767-68 (10th Cir. 1999) (quoting 15 Okla. Stat. § 160).  Courts "will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision."  S. Corr. Sys.

7

v. Union City Public Schools, 64 P.3d 1083, 1089 (Okla. 2002).  The ultimate goal of "contract interpretation is to determine and give effect to the intent of the parties." Otis Elevator, 483 F.3d at 1101.

The issue in the instant case is very simple:  what does the word "claim" mean?  The Agreement states that "Losses Charged" to Plaintiff in calculating his bonus are based on "the amount [Defendants] have paid on *claims*."  The issue here is whether the word "claim" includes extra-contractual payments, *i.e.* tort payments, to an insured arising outside of the compensation guaranteed under an insurance policy.  The Oxford English Dictionary defines "claim" as:

> 1. a. A demand for something as due; an assertion of a right to something . . . to lay claim to: to assert one's right to, claim.
> ***
> b. *spec*. in *Insurance*, an application for the compensation guaranteed by an insurance company, esp. for loss of or damage to property, etc., insured.

Oxford English Dictionary Online (2d ed. 2008) (emphasis in original).

Defendants argue that Definition 1.a. above is the ordinary and popular meaning of "claim" and that a tort action against an insurance company is merely based on an insured's "demand for something as due."  Thus, the argument goes, the ordinary and popular definition of "claim" includes bad-faith settlements, and Defendants are not in breach of contract for classifying the settlement payment as a "claim."  In support of their argument, Defendants correctly point out that the Agreement involves an agency contract, not an insurance policy. This fact, however,

does not require the Court to completely ignore the obvious insurance context "gathered from a four-corners' examination of the [Agreement]." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 546 (Okla. 2003).

The Agreement is steeped in language pertinent to the insurance industry. For example, the Agreement's bonus provision, where the disputed term "claim" is also located, refers to "[p]remium[s]" received on "[p]olicies" sold by Plaintiff. Certainly, "premium" and "policy" have different meanings when used outside the insurance context. The "contractual intent" behind each term is obvious, however, when "determined from the entire agreement." S. Corr. Sys., 64 P.3d at 1088-89. Similarly, a four-corners examination of the Agreement indicates the parties had the insurance meaning of "claim" in mind, rather than the broader version espoused by Defendants. See Dillon Family & Youth Servs., Inc. v. Dep't of Human Servs., 965 F.2d 932, 935 (10th Cir. 1992) ("Under Oklahoma law, '[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'") (quoting 15 Okla. Stat. § 164). We will "not permit ambiguities to be created by taking contract provisions out of context." FDIC. v. American Casualty Co., 975 F.2d 677, 680 (10th Cir. 1992). If Defendants intended a meaning other than the quite common and unambiguous definition applied in the insurance context, they should have made it clear at the time of contract. "[A] party to a contract cannot fail to disclose a meaning he attaches to a term which is not in accordance with the accepted meaning in the industry when he is aware or

9

should be aware that the other party is using the term in its accepted sense." CMI Corp. v. Gurries, 674 F.2d 821, 824 (10th Cir. 1982).

Having determined the parties intended "claim" to mean the compensation guaranteed by an insurance company, we hold the Agreement is unambiguous and Defendants are in breach of contract for treating their bad-faith settlement payment as a loss on the policy sold by Plaintiff. An action alleging bad-faith lies in tort, *not* in the compensation guaranteed under contract, and involves "the unjustified withholding of payment due under a policy." Haberman v. The Hartford Ins. Group, 443 F.3d 1257, 1270 (10th Cir. 2006) (citation omitted). Thus, the "claim" relevant to the Agreement here was the "payment due under [the] policy" sold by Plaintiff, not the tort action resulting from Defendants' "unjustified withholding of [that] payment." Id. Because the settlement payment was, therefore, unrelated to a "claim" under the policy, we affirm the district court's grant of summary judgment on Plaintiff's action for breach of contract.

### III.

We now turn to the five main issues Plaintiff has raised on appeal. First, he argues the district court erred by limiting recovery from the breach of the implied covenant of good faith and fair dealing to contract damages. Plaintiff asserts the issue of punitive damages should have been submitted to the jury. Second, Plaintiff argues the district court erred in granting judgment as a matter of law for Defendants on the fraud/constructive fraud claim. Plaintiff contends this claim should have been

submitted to the jury. Third, Plaintiff argues the district court erred in granting summary judgment on the breach of fiduciary duty claim. Plaintiff asserts that whether a fiduciary duty exists between contracting parties is a jury question. Fourth, Plaintiff argues the district court should not have apportioned attorney fees between the contract and tort claims because the claims were so interrelated. Fifth, Plaintiff argues the district court erred in denying injunctive and declaratory relief to preclude Defendants from continuing their practice of applying tort payments to agents' Loss Ratios.

A.

We first address whether the district court erred in ruling that Oklahoma law precluded Plaintiff from recovering punitive damages for Defendants' breach of the implied covenant of good faith and fair dealing.[1] We review the district court's determination of state law and the propriety of punitive damages de novo. See FDIC v. Hamilton, 122 F.3d 854, 857 (10th Cir. 1997).

Under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing." Wathor v. Mutual Assurance Adm'rs, Inc., 87 P.3d 559, 561 (Okla. 2004). In cases involving "ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability."

---

[1] Because Plaintiff already received contract damages and because we hold he is unable to recover punitive damages for any possible breach of the implied duty of good faith and fair dealing, we need not decide whether Defendants, in fact, breached the implied duty of good faith and fair dealing owed to Plaintiff.

11

Id. In the "*proper* case," however, "punitive . . . damages *may* be sought." Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1079 (10th Cir. 2003) (emphasis added). The "proper case" requires that a "special relationship" exist between the parties. See Wathor, 87 P.3d at 561-62. Oklahoma courts have found such a "special relationship" in only very limited circumstances, most notably between an insurer and insured. Id. at 561; see also, Allison v. UNUM Life Ins. Co., 381 F.3d 1015, 1027 (10th Cir. 2004) ("there is no dispute that the Oklahoma [bad- faith] law is directed toward the insurance industry"). The "special relationship" in insurance contracts stems from the "quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable." Wathor, 97 P.3d at 561-62; see also Christian v. American Home Assurance Co., 577 P.2d 899, 902 (Okla. 1977) (noting the special relationship in insurance contracts exists because the insured is not entering the contract to obtain commercial advantage but to protect from risk of accidental losses).

In contrast, the Agreement between Plaintiff and Defendants is a private, commercial agency contract. The Agreement lacks the quasi-public nature and unequal bargaining positions present in insurance contracts. Moreover, the Agreement is based upon each party's attempt to obtain a commercial advantage and is dissimilar to situations where "the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part

12

of an economically powerful entity." Id. Because no such special relationship exists between Plaintiff and Defendants, any breach by Defendants, "merely results in damages for breach of contract, not independent tort liability." Wathor, 97 P.3d at 561; see also Roberts v. Wells Fargo AG Credit Corp., 990 F.2d 1169, 1174 (10th Cir. 1993) (finding no special relationship, and therefore, no tort liability, in commercial lending setting); Hinson v. Cameron, 742 P.2d 549, 554 (Okla. 1987) (declining to impose tort liability for bad-faith termination of at-will employee). Accordingly, the district court properly limited recovery on the breach of the implied duty of good faith and fair dealing claim to contract damages.

B.

We next address whether the district court erred in granting judgment as a matter of law for Defendants on Plaintiff's fraud/constructive fraud claim. On appeal, Plaintiff argues his constructive fraud claim should have been submitted to the jury. We review a district court's grant of judgment as a matter of law de novo. Speciality Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1175 (10th Cir. 2008).

Oklahoma law permits "a plaintiff to bring simultaneous claims for fraud and breach of contract." Id. at 1180. A party, however, "may not obtain double recovery." Id. In addition, "[f]raud is never presumed and it must be proved by clear and convincing evidence." Rogers v. Meiser, 68 P.3d 967, 977 (Okla. 2003). Accordingly, "the mere allegation of fraud alone 'will not justify the submission of

13

that issue [to the jury] unless facts are produced from which an irresistible deduction of fraud reasonably arises.'" Roberts, 990 F.2d at 1173 (quoting Silk v. Phillips Petrol. Co., 760 P.2d 174, 177 (Okla. 1998)). Although "a defendant's acts may constitute fraud at law and allow a recovery of actual damages, not every fraud case will support a punitive damage recovery." Rogers, 68 P.3d at 977. To obtain punitive damages, a plaintiff is "required to show not only all the elements of actionable fraud, but evil intent or such aggravating circumstances as to be deemed equivalent to such intent." Id.

While we believe Plaintiff's fraud allegations do not likely warrant submission to the jury, we need not decide the matter because Plaintiff already received damages for Defendants' breach of contract and is not entitled to double recovery under a fraud theory. See Speciality Beverages, 537 F.3d at 1180. Thus, all that remains is the possibility of punitive damages. We conclude that "submission of the issue of punitive damages to a jury [would] be improper." Willis v. Midland Risk Ins. Co., 42 F.3d 607, 614 (10th Cir. 1994). Plaintiff has failed to demonstrate the requisite "evil intent or such aggravating circumstances as to be deemed equivalent to such intent" for punitive damages. Rogers, 68 P.3d at 977.

The record reflects that individuals whom Defendants insured rarely sued for the bad-faith handling of a policy claim. Here, when such an instance did occur on a policy sold by Plaintiff, Defendants clearly informed Plaintiff of the accounting procedure under which his bonus commission would be negatively impacted. After

14

receiving word of his bonus reduction, Plaintiff was allowed the opportunity to contest Defendants' procedure directly to corporate executives. Defendants considered Plaintiff's arguments but ultimately decided they would continue to apply such bad-faith settlement payments to agents' Loss Ratios.

Plaintiff has not provided evidence that Defendants acted "with some evil intent, or . . . such gross negligence [or] such disregard of [Plaintiff's] rights, as deemed equivalent to such intent." Id. In fact, Plaintiff's briefing focuses on a theory of "constructive fraud." Notably, the difference between constructive fraud and traditional common law fraud is that constructive fraud does not require *intent* to deceive. Speciality Beverages, 537 F.3d at 1181. Defendants mere failure, at time of contract, to disclose their policy of attributing bad-faith payments to agents' Loss Ratios, without actual or presumed malicious intent, does not "rise to the level that justifie[s] submission of the punitive damages issue to a trier of fact." Willis, 42 F.3d at 615 (affirming district court's refusal to submit punitive damages issue to jury where evidence of defendant's malice or reckless disregard was insufficient). Accordingly, the district court appropriately withheld Plaintiff's fraud/constructive fraud claim from the jury.

## C.

We next address whether the district court erred in granting judgment as a matter of law on the breach of fiduciary claim. The district court ruled no fiduciary duty existed between Plaintiff and Defendants. As with the fraud claim, Plaintiff

15

asserts this question should have been submitted to the jury. Our review of the district court's grant of judgment as a matter of law is again de novo. Speciality Beverages, 537 F.3d at 1175.

Under Oklahoma law, fiduciary relationships "can arise anytime the facts and circumstances surrounding a relationship would allow a reasonably prudent person to repose confidence in another person." Quinlan v. Koch Oil Co., 25 F.3d 936, 942 (10th Cir. 1994) (citation omitted). Entering a contract "can be the mere incident creating the [fiduciary relationship]," id. at 943, so long as the facts and circumstances are not "indicative of an arms length commercial contract." Id. at 942. As such, an action for breach of fiduciary duty which "arises from contract can be based either in tort or contract." Id. at 943 (citations omitted). If a plaintiff chooses to pursue a tort claim rather than breach of contract, "the issue of punitive damages *may* be presented to the jury." Id. (emphasis added) (when a breach of fiduciary duty does arise from contract, the injured party must "choose whether to sue for breach of contract or for tort"). Oklahoma law, however, "precludes the recovery of punitive damages where the gravamen of plaintiff's action is for breach of an obligation arising from contract." Id.; see also Burton v. Juzwik, 524 P.2d 16, 19-20 (Okla. 1974); 23 Okla. Stat. § 9.

Again, all that remains for Plaintiff is the possibility of punitive damages. Plaintiff is precluded from recovering punitive damages for any breach of fiduciary duty because the "gravamen of [P]laintiff's action is for breach of an obligation

16

arising from contract."[2]  Quinlan, 25 F.3d at 943.  Moreover, as we held with Plaintiff's fraud claim, the evidence at trial does not "rise to the level that justifie[s] submission of the punitive damages issue to a trier of fact."  Willis, 42 F.3d at 615.  Accordingly, even if a fiduciary duty existed between Plaintiff and Defendants, which we do not decide, no issues were left for jury determination.  Plaintiff's breach of fiduciary duty claim was, therefore, appropriately withheld from the jury.

D.

We next address whether the district court erred in apportioning attorney fees between the contract and tort claims.  In diversity cases, attorney fees are a substantive matter controlled by state law.  North Texas Prod. Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 817 (10th Cir. 2000).  We review the legal principles underlying an award de novo.  Id.  However, the ultimate "determination of reasonableness and amount of the fee award is generally left to the sound discretion of the district court."  Gamble, 175 F.3d at 773.

Oklahoma strictly adheres to the "American rule concerning attorney's fees." North Texas, 222 F.3d at 818.  Attorney fees are not available unless (1) the opponent acts in bad faith, (2) attorney fees are authorized under a specific statute, or (3) a contract exists between the parties which governs attorney fees.  Id. Accordingly, "[i]n a case involving multiple claims where prevailing party attorney

---

[2]  Plaintiff's brief acknowledges "[i]t [is] Defendants' breach of contract . . . that [is] the gravamen of this case."  Brief for the Plaintiff-Appellant at 30.

17

fees are authorized for only one claim, the law dictates that the court 'apportion' the fees so that attorney fees are awarded only for the claim for which there is authority to make the award." Tsotaddle v. Absentee Shawnee Housing Auth., 20 P.3d 153, 162 (Okla. Civ. App. 2000). Oklahoma law provides a statutory exception authorizing attorney fees for breach of contract claims. See 12 Okla. Stat.§ 936. No similar statutory exception exists for tort actions. R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co., 813 P.2d 1, 14 (Okla. Civ. App. 1989), overruled on other grounds by Taylor v. Chubb Group of Ins. Cos., 874 P.2d 806 (Okla. 1994).

In the instant case, the district court correctly recognized its duty to apportion fees between the contract claim and the tort claims.[3] Despite Plaintiff's contention to the contrary, Oklahoma does not have an "inextricably intertwined" theory upon which attorney fees do not have to be apportioned if the claims are closely related. See State Bank & Trust v. First State Bank, 2000 WL 1862690, at *14 (10th Cir. Dec. 20, 2000) (unpublished) ("Although we are sympathetic to the difficulty of segregating attorneys' fees between claims that are so closely related, we can find no support for an 'inextricably intertwined' exception to the general Oklahoma rule that attorneys' fees can only be awarded where there is an independent statutory basis."). Moreover, after the district court granted summary judgment for Plaintiff

---

[3] No contract exists between the parties governing attorney fees and Defendants' litigation conduct is not at issue, thereby leaving only the possibility of attorney fees authorized by statute.

18

on the breach of contract claim, all that remained was the possibility of punitive damages arising from the tort claims. The district court was eminently reasonable in using this point as the appropriate cut-off for separating work performed on the contract and tort issues. See R.J.B. Gas Pipeline, 813 P.2d at 14 (reversing and remanding case so that trial court could apportion and eliminate attorney fees for unsuccessful punitive damages claims). We, therefore, affirm the district court's award of $14,126.50 in attorney fees.

E.

Finally, we address whether the district court erred in denying Plaintiff's request for injunctive and declaratory relief. Injunctive relief is an equitable remedy and a district court's decision to grant or deny injunctive relief is reviewed for abuse of discretion. Signature Prop. Int'l Ltd. P'ship v. City of Edmond, 310 F.3d 1258, 1268 (10th Cir. 2002). In diversity cases, the law of the forum state governs claims for injunctive relief. See Mid-America Pipeline Co. v. Lario Enters., Inc., 942 F.2d 1519, 1523 (10th Cir. 1991). Injunctive relief "is an extraordinary remedy that should not be lightly granted." Sharp v. 251st St. Landfill, Inc., 925 P.2d 546, 549 (Okla. 1996). "Under Oklahoma law, injunctive relief is not warranted where a plaintiff has a plain, speedy, and adequate remedy at law." Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1242 (10th Cir. 2006) (citation omitted). If a plaintiff's injury "may be compensated by an award of monetary damages then an adequate remedy at law exists." Coxcom, Inc. v. Oklahoma Secondary Schools Athletic

19

Ass'n, 143 P.3d 525, 529 (Okla. Civ. App. 2006). In the instant case, the monetary damages awarded to Plaintiff were clearly a "plain, speedy, and adequate remedy at law." Australian Gold, 436 F.3d at 1242. The district court, therefore, did not abuse its discretion in denying injunctive relief.[4]

IV.

We do not decide whether Defendants violated Oklahoma public policy. Based on our independent analysis, we affirm the district court's ultimate conclusion that Defendants were in breach of contract. We further affirm the judgment of the district court in all other respects.

**AFFIRMED**.

---

[4] Plaintiff also argues the district court erred in excluding Plaintiff's expert witness and evidence of Defendants' conduct outside Oklahoma. We resolve these issues summarily. Plaintiff's expert was prepared to testify that Defendants' practice conflicted with accepted industry practice. Plaintiff's evidence of Defendants' conduct outside Oklahoma showed that in some instances Defendants attributed bad-faith payments as "claims" on agent policies and in other instances, they did not. As we observed throughout this opinion, because Plaintiff has already been awarded contract damages, all that remains is the possibility of punitive damages. Plaintiff's expert testimony and his minimal and conflicting evidence of Defendants' conduct outside Oklahoma do not materially advance the punitive damages issue, *i.e.*, whether Defendants acted with "evil intent" in contracting with Plaintiff. Thus, we need not decide whether the district court abused its discretion in excluding Plaintiff's expert witness and evidence of Defendants' conduct outside Oklahoma because any potential error was certainly harmless.