ORDER AND JUDGMENT *
PAUL KELLY, JR., Circuit Judge.
Defendant-Appellant Menu Maker Foods, Inc. (MMF) appeals from a jury verdict awarding Plaintiff-Appellee Mons-our’s, Inc. damages for MMF’s breach of an Asset Purchase Contract. Both parties were food wholesalers. Monsour’s experienced financial difficulty and sought to refocus its business on the sale of produce. MMF sought an opportunity to expand its sales into a new market area. MMF agreed to purchase Monsour’s food service inventory and to purchase substantially all of its produce from Monsour’s.
On appeal, MMF contends that it is entitled to judgment as a matter of law because (1) insufficient evidence supports the liability and damages related to the food service inventory. MMF also claims it is entitled to a new trial because the district court (2) improperly excluded impeachment evidence concerning inventory reports and financial statements, and (3) prohibited MMF from contesting certain facts. In addition, MMF contends that the district court (4) committed reversible error in awarding prejudgment interest and (5) improperly awarded attorneys’ fees. Aplt. Br. at 1-2, 27-28. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Background

We take the facts in the light most favorable to Monsour’s. Monsour’s sold wholesale produce and grocery items in *799 Kansas, Missouri, Arkansas, and Oklahoma. 4 App. at 4-5, 12-16. In 2001, Monsour’s decided to limit its business to produce. 4 App. at 13-15. At the same time, MMF wanted to buy produce more cheaply and to acquire food service customers. 4 App. at 19-21. Each saw a “win-win” opportunity. 2 App. at 30. The companies negotiated and arrived at an Asset Purchase Agreement. 4 App. at 16-17. Monsour’s provided MMF a report showing that Monsour’s dry and frozen food service inventory cost $1,109,219. 4 App. at 25. MMF inspected the inventory. 2 App. at 27.
MMF promised to buy (1) “substantially all” of its produce requirements from Monsour’s and (2) an estimated $750,000 to $800,000 of Monsour’s food service inventory within eight weeks. 1 App. at 36, 43, 2 App. at 27-28. It would help sell any food service inventory it did not buy. 1 App. at 36. In return, Monsour’s transferred its sales staff to MMF and agreed not to compete. 1 App. at 38, 41.
Yet, instead of buying $750,000 to $800,000 of food service inventory, MMF bought $250,000 of it. 2 App. at 28. Its “best efforts” to sell the rest amounted to calling four vendors and providing phone numbers for salvage dealers. 5 App. at 17-18, 7 App. at 167-70. Bound by the contract not to compete in most food service sales, Monsour’s sold only $27,000 of its leftover inventory to others. 4 App. at 48, 53.
Nor did MMF purchase “substantially all” of its produce from Monsour’s. Over ten weeks, MMF bought $72,590.39 of produce from Monsour’s. 4 App. at 366-67. It filled the rest of its $30,000 per week order elsewhere. 4 App. at 58. MMF also disregarded the contract’s ordering procedures and created pretexts to reject produce. 4 App. at 45, 65-66, 127, 133, 137,143-46, 310-11, 423.
Monsour’s threw away hundreds of thousands of dollars of expired food. 4 App. at 45-48, 148. Four months after the agreement, it went out of business. 4 App. at 57. It then brought this diversity action for breach of contract. 1 App. at 28-48. A jury awarded Monsour’s damages of $472,000 for the food service inventory and $135,849.71 for its produce. 3 App. at 48-49. The district court denied MMF’s motion for judgment as a matter of law (JMOL). Monsour’s Inc. v. Menu Maker Foods, Inc., No. 05-1204-JTM, 2009 WL 89701, at *1-2 (D.Kan. Jan.13, 2009). The court awarded Monsour’s $155,001.67 in prejudgment interest and $307,128.80 in attorneys’ fees. Id. at *5-8. MMF appeals.

Discussion

I. Sufficient Evidence Showed Liability and Damages.
MMF argues that the evidence at trial was insufficient to prove its liability and Monsour’s damages for the food service inventory. Aplt. Br. at 30-38. We review the district court’s denial of JMOL de novo. United Mine Workers of Am. v. Rag Am. Coal Co., 392 F.3d 1233, 1237 (10th Cir.2004). A court should grant JMOL if the evidence reveals “no legally sufficient evidentiary basis for a claim.” Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d 1260, 1269 (10th Cir.2008) (citation omitted). We reverse a denial of JMOL “‘if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party’s position.’ ” Id. (citation omitted). We do not “ ‘weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury.’ ” Id. (citation omitted).
The contract required all inventory to be in a “good and wholesome condition, 100% resellable condition.” 1 App. at 36. MMF *800 claims that Monsour’s did not establish this condition item-by-item for the unsold inventory. Aplt. Br. at 30-32. MMF also claims that Monsour’s did not prove each item’s price under a contractual pricing formula. Aplt. Br. at 33-38. Before signing, MMF inspected Monsour’s inventory valued at cost ($1,109,219). 2 App. at 27. MMF estimated in the contract that it would buy $750,000 to $800,000 of inventory. 1 App. at 36. A jury could infer that cost represented an upper value of the inventory and that at least $750,000 of Monsour’s inventory was “in good and wholesome condition and 100% resellable” at the time of the inspection. 4 App. at 104-05, 115. After all, the parties were in agreement as to the $750,000-$800,000 estimated value — though MMF now tells us that the estimate was to prevent Mark Monsour’s bank from calling a line of credit. Aplt. Reply Br. at 5. Apparently the jury inferred that the estimate established the inventory’s value, and then subtracted $250,000 for inventory MMF purchased, and $27,000 for inventory Monsour’s sold elsewhere. It awarded $472,000 of the $473,000 in damages that Monsour’s requested. 3 App. at 48, 4 App. at 53, 161. Drawing every reasonable inference in Monsour’s favor, the evidence is sufficient.
The jury’s damages award conforms with the district court’s instructions on how to calculate damages. 3 R. at 24, 26, 36-42. If MMF wanted more specific instructions on damages — such as one emphasizing a requirement to price each item by the contract’s pricing mechanism — then it should have challenged those instructions. MMF does not appeal those instructions.
Although MMF now insists on strictly enforcing the contract’s pricing mechanism, evidence showed that, shortly after the parties signed the contract, MMF admitted that the pricing mechanism would not matter. The head of MMF instructed his employees to disregard that provision and never to pay more than current market value. 7 App. at 170. Because the formula would not have established what MMF would pay, we decline to require the formula to establish damages now.
MMF also argues that evidence of the value Monsour’s inventory subsequent to the initial cost of $1,109,219 on January 14, 2002, makes it a factual impossibility that damages could have been $472,000. MMF argues that this shows that the damages could not have exceeded $250,950. Aplt. Br. at 37-38; Aplt. Reply Br. at 2-7. The jury was free to consider inventory level fluctuations, but was not required to make the inference MMF now suggests. Juries resolve potentially inconsistent evidence, not appellate courts. The estimate is sufficient to support the verdict.
II. The Court’s Evidentiary Rulings Were Not an Abuse of Discretion.
We review evidentiary decisions for an abuse of discretion. United States v. Schene, 543 F.3d 627, 642 (10th Cir.2008).
A. The Court May Limit Testimony about Mr. Monsour’s Bank Reports.
MMF first contends that the district court improperly limited MMF’s impeachment of Mark Monsour, the president and co-owner of Monsour’s. Aplt. Br. at 39-45. Mr. Monsour was Monsour’s main witness at trial. During discovery, Mr. Monsour admitted that he once gave his bank inflated inventory reports to prevent it from calling in his company’s loans and from ending its credit line. 2 App. at 374-79. Mr. Monsour explained that he would have done anything to save his business. Id. MMF argues that the district court improperly limited examination *801 about the reports (and resulting financial statements).
At trial, MMF used the false reports to impeach Mr. Monsour’s testimony and records. Mr. Monsour admitted that the inventory report was inaccurate, that there was a discrepancy between that report and other accurate reports, and that the inaccurate report was “inflated.” 4 App. at 24-25, 214-16. Citing Federal Rule of Evidence 403, the court prevented further examination tending to show that Mr. Monsour intentionally defrauded the bank. Fed.R.Evid. 403; 4 App. at 282-83. Under Rule 403, a court may exclude relevant evidence “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
Excluding this evidence was not an abuse of discretion. First, no evidence suggested that Monsour’s ever gave MMF falsified inventory reports or balance sheets or that MMF ever relied upon them. Second, Mr. Monsour essentially testified that the misstatements were intentional and that he had been dishonest. At this point, the impeachment value of further testimony diminished. Simultaneously, the risk of unfair prejudice increased — extensively litigating unrelated reports could confuse and misdirect the jury. 4 App. at 283. MMF’s invitation to infer that this could explain the fluctuating inventory amounts in Monsour’s financial statements is speculation and we can see why the district court did not want the jury to explore that inference. See Aplt. Reply Br. at 12. Moreover, litigating numerous collateral matters would lengthen the trial. The court therefore acted within the wide range of permissible evidentiary rulings. Cf. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1229 (10th Cir.2000).
The dissent would reverse the judgment on the grounds that this testimony did not provide the jury with the reason for Mr. Monsour’s misstatements, but only showed that there were misstatements, the amounts were inflated and the statements were prepared at Mr. Monsour’s direction. We disagree with the dissent — ample testimony was elicited to impeach Mr. Mons-our’s credibility and the parties sufficiently litigated the issue of the inventory’s proper valuation.
Consequently, the district court’s Rule 403 decision was supportable. The district court was understandably solicitous, during a three-week trial involving hundreds of documents and rulings, to prevent the jury from delving into false reports that MMF never had or relied upon during the contract’s formation and performance. In short, the reports are not the smoking gun on the inventory issue that the dissent makes them out to be. The district court’s judgment call about their probative value and unfair prejudice is not an abuse of discretion.
B. The Dumpster Invoice Did Not Prejudice MMF.
MMF next argues that the district court prejudiced MMF when it let Mr. Monsour testify about a “fraudulent invoice.” Aplt. Br. at 44. At trial, Mons-our’s attempted to introduce a replacement invoice for a thirty-yard dumpster it rented to dispose of expired food. 6 App. at 304-07. The court excluded the invoice as hearsay and instructed the jury to disregard it. 6 App. at 305-06. Mr. Monsour then testified about the dumpster from his independent recollection. 6 App. at 306-OS.
This did not prejudice MMF. Mons-our’s proffer was not fraud on the court. Monsour’s Inc., 2009 WL 89701, at *4. Nor does it entitle MMF to more cross- *802 examination about Mr. Monsour’s alleged bank fraud. The district court’s earlier Rule 403 ruling took into account the importance of Mr. Monsour’s credibility. Besides, the court cured any prejudice when it instructed the jury to ignore the invoice. See, e.g., United States v. Hinson, 585 F.3d 1328, 1340 (10th Cir.2009). The jury was free to evaluate Mr. Monsour’s credibility.
C. The Court Did Not Equate Attorneys’ Arguments and Evidence.
MMF suggests that the court impermis-sibly instructed the jury that it may use attorneys’ arguments as evidence. Aplt. Br. at 37. During deliberations, the jury asked how Monsour’s calculated its damages. 3 App. at 50. The court replied, “You will have to rely on your collective memory of the exhibits, other evidence, and attorneys’ arguments.” 3 App. at 51. It had earlier instructed that arguments are not evidence. 3 App. at 4, 9.
The court’s reply to a question about a party’s argument referred the jury to the evidence and the parties’ arguments. It did not conflate the two.
III. The District Court Did Not Improperly Establish Facts.
MMF argues that the district court improperly established facts under Federal Rule of Civil Procedure 56(d)(1).[1] Aplt. Br. at 45-46. We need not decide whether the district court acted properly. MMF had a duty to object to errors, and far from objecting, it stipulated that the court correctly established these facts. 2 App. at 93-94 (Revised Pretrial Order submitted by the parties). It therefore waived any claim of error. See, e.g., Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141—42 (10th Cir.2007).
Alternatively, MMF’s subsequent stipulation to the facts makes their establishment proper. Its stipulation rendered any action by the district court or Mons-our’s irrelevant. We find no error.
IY. The Court Properly Awarded Prejudgment Interest.
MMF next argues that the district court incorrectly awarded prejudgment interest. Aplt. Br. at 46—48. We review the court’s legal analysis de novo and a prejudgment interest award for an abuse of discretion. Loughridge v. Chiles Power Supply Co., Inc., 431 F.3d 1268, 1288 (10th Cir.2005). Missouri law governs. Id.; 1 App. at 42.
Under Missouri law, a court must award prejudgment interest if the contractual damages are liquidated. Mo. Ann. Stat. § 408.020[2]; Denton Constr. Co. v. Mo. State Highway Comm’n, 454 S.W.2d 44, 59-60 (Mo.1970); Watters v. Travel Guard Int’l, 136 S.W.3d 100, 111-12 (Mo.Ct.App. 2004). A claim is liquidated if it is “fixed and determined or readily ascertainable by computation or a recognized standard.” Baris v. Layton, 43 S.W.3d 390, 397 (Mo. Ct.App.2001); see also Komosa v. Monsanto Chemical Co., 317 S.W.2d 396, 400 (Mo.1958), partially overruled on other grounds, Martin v. Mid-America Farm Lines, Inc., 769 S.W.2d 105, 112 n. 13 (Mo.1989). A claim may be liquidated even if the parties dispute liability and damages, and even if a court awards fewer damages than a claimant requests. Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo.1987).
*803 MMF argues that the damages were unascertainable because (1) Monsour’s damages estimates varied and (2) the damages were ascertained only at trial. Aplt. Br. at 47-48. But disputes over the amount of damages, without more, do not make a claim unliquidated. Catron, 723 S.W.2d at 7; Denton Constr. Co., 454 S.W.2d at 59-60. We uphold the award.
Y. The Award of Attorneys’ Fees Was Not an Abuse of Discretion.
Last, MMF contends the court improperly awarded fees. Aplt. Br. at 48-52. We review the court’s legal analysis de novo and its award for an abuse of discretion. Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001 (10th Cir.2008). Missouri law again governs. Combs, 551 F.3d at 1001. Under the contract, MMF must pay for expenses and attorneys’ fees resulting from its breach. 1 App. at 42; cf. Trimble v. Pracna, 167 S.W.3d 706, 714 (Mo.2005) (enforcing fee clause).
First, MMF argues that it should not have to pay for time spent on dismissed claims for fraud, punitive damages, and lost profits, nor for time spent on the owners’ individual claims. Aplt. Br. at 50-52. Still, a court may award fees where the effort and proof were the same for unsuccessful and successful claims. See, e.g., Gilliland v. Mo. Athletic Club, 273 S.W.3d 516, 523-24 (Mo.2009). The district court reasonably determined that all the claims “were based on a common core of facts.” Monsour’s Inc., 2009 WL 89701, at *5. The records thus need not segregate which work went to which issue. Brockman v. Soltysiak, 49 S.W.3d 740, 745-46 (Mo.Ct.App.2001).
Second, MMF argues that Mons-our’s improperly duplicated fees when it used two attorneys instead of one. Aplt. Br. at 50. We disagree. Monsour’s “used two attorneys only in key depositions and in hearings.” Monsour’s Inc., 2009 WL 89701, at *7. The occasional use of two attorneys was reasonable in a three-year case culminating in a three-week trial. Id.
Third, MMF disputes the fees for Monsour’s unsuccessful motion to enforce a settlement. Aplt. Br. at 52. The district court correctly held that attempts to enforce a settlement were expenses stemming from the breach. Monsour’s Inc., 2009 WL 89701, at *6.
Fourth, MMF objects to paying for Marshall Hull’s expert services. Aplt. Br. at 52. The district court held that “[ajlthough Mr. Hull did not testify ... his work product at trial was a factor in Mons-our’s successful outcome.” Monsour’s Inc., 2009 WL 89701, at *7. Monsour’s hired Mr. Hull to disprove MMF’s defense that Monsour’s would fail whether or not MMF breached the contract. 2 App. at 318-19. Mr. Hull’s report also detailed Monsour’s lost profits, which were once at issue. Id. His fees therefore resulted from the breach. Cf. Architectural Res., Inc. v. Rakey, 912 S.W.2d 676, 679 (Mo.Ct. App.1995).
Fifth, MMF argues that counsels’ billing records are “not sufficiently detailed.” Aplt. Br. at 48-50. • Monsour’s submitted forty-nine pages showing “the time incurred ... the date of the action, the timekeeper ... the work completed and the time billed.” Aplee. Br. at 40; 3 App. at 66-114. This enabled the court to decide which work related to the breach. It granted fees accordingly. Monsour’s Inc., 2009 WL 89701, at *5-7.
All in all, the award was not an abuse of discretion. A court may consider a case’s “length and complexity.” Essex Contracting, Inc. v. Jefferson County, 211 S.W.3d 647, 656-57 (Mo.2009). MMF agreed with Monsour’s that this action involved “a very large body of documentary evidence and numerous depositions were taken in three *804 different states. The case was fact, witness and document intensive and clearly presented a complex legal action requiring heavy expenditures of time and labor.” 8 App. at 58, 206.
AFFIRMED.

 This'order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. "If summary judgment is not rendered on the whole action, the court should ... determine what material facts are not genuinely at issue.... The facts so specified must be treated as established.” Fed.R.Civ.P. 56(d)(1).

. "Creditors shall be allowed to receive interest ... for all moneys after they become due and payable, on written contracts....” Mo. Ann. Stat. § 408.020.