FILED
United States Court of Appeals
Tenth Circuit

December 1, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL J. WARD,

      Plaintiff-Appellee,

v.

THE SIEBEL LIVING TRUST,

      Defendant-Appellant,

and

THOMAS SIEBEL; FIRST VIRTUAL
MANAGEMENT, INC.,

      Defendants.

No. 10-1498
(D.C. No. 1:06-CV-00036-WYD-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TYMKOVICH**, Circuit Judge, and **EAGAN**[**], Chief
District Judge.

---

In this diversity action, Defendant-Appellant, The Siebel Living Trust Dated

7/27/93 (Trust), appeals from the district court's order denying the Trust's motion to

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Claire V. Eagan, Chief Judge of the United States District Court
for the Northern District of Oklahoma, sitting by designation.

recover its attorney fees and costs pursuant to a real estate sales contract with Plaintiff-Appellee Michael J. Ward (Ward). In addressing the question of whether the Trust or Ward was the prevailing party, and thereby entitled to recover reasonable fees and costs under the contract, we must restrict our review under Colorado law to the competing claims of the parties to the contract. Although Ward recovered the commission he sought, he did not recover against the Trust. The Trust was successful in its defense of all claims Ward brought against it and, therefore, as between Ward and the Trust, the Trust prevailed. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse and remand.

I.

On May 6, 2004, the Trust entered into an Exclusive Right-to-Sell Listing Contract (the "Listing Contract") with Ward to sell an $8.5 million property in Mountain Village, Colorado (the "Property"). Aplt. App. at 227. The Listing Contract provided "that if the Property sold during the listing period, [Ward] is entitled to a 6% commission of the gross sales price of the Property." Id. The Listing Contract also entitled Ward to the same commission if the property sold within 180 days of the end of the listing period to anyone with whom Ward negotiated during the listing period, provided that Ward submitted the person's name to the Trust prior to the end of the listing period. Id. At the end of the listing period, Ward submitted several names to the Trustee of the Trust, Thomas Siebel, but Siebel did not respond. Id. at 227-28. Ward next submitted the list to Justin Dooley, President of First Virtual Management, Inc. ("FVM"), a corporation that exists to manage the Trust. Id. at 228. Dooley agreed to exclude the listed people from any agreements

2

with other brokers, but he failed to do so when the Trust entered into a new Exclusive Right-to-Sell Listing Contract with a new agent. Id. Within 180 days of the end of Ward's listing period, the property sold to a buyer with whom Ward negotiated during the listing period and whose name Ward submitted to the Trust prior to the end of the listing period, but another broker collected the commission. Id. at 229.

Seeking to collect his commission, Ward filed suit against Siebel and the Trust. He alleged breach of contract, breach of an implied duty of good faith and fair dealing, and false representation. Id. at 33, 35, 38, 40. Ward later amended his complaint to add additional claims and additional defendants. He added Dooley and FVM because "of Defendants' apparent denial of Dooley's agency authority to bind the [T]rust." Pl. Mot. for Leave to Am. Compl., Docket No. 22, at 3. Thus Ward's amended complaint named Siebel, the Trust, Dooley, and FVM as defendants. It alleged breach of contract, unjust enrichment, procuring cause, and breach of an implied duty of good faith and fair dealing against Siebel and the Trust. Aplt. App. at 43, 53, 56, 57, 59. In the alternative, the complaint alleged false representation by Siebel, the Trust, FVM, and Dooley. Id. at 63. The case was submitted to a jury on all claims, and the jury found for the defendants on all but two claims. Id. at 121–26. Specifically, the jury found that the Trust breached its duty of good faith and fair dealing and that Dooley committed fraud based on deceit.

The Trust sought judgment as a matter of law on the good faith and fair dealing claim, which the district court denied. Id. at 136. The Trust appealed that decision to this court, and we held for the Trust. Ward v. Siebel Living Trust, 365 F. App'x 984 (10th

3

Cir. 2010) (unpublished). After the appeal, the district court entered an amended judgment in favor of the Trust on all claims; the claim against Dooley was dismissed pursuant to a settlement agreement between Dooley and Ward. Aplt. App. at 185, 129.

II.

The present controversy arose after the Trust moved for attorney fees and costs under a fee-shifting provision in the Listing Contract. Id. at 187. The fee-shifting provision provided that "[i]n case of arbitration or litigation concerning this contract, costs and reasonable attorney fees shall be awarded to the prevailing party." Id. at 244. The Trust argued that because it had prevailed on all of Ward's claims against it, it was the prevailing party in the litigation and should be awarded costs and reasonable attorney fees. Ward opposed the motion, arguing that both parties prevailed on some claims in the litigation as a whole and that the requested fees and costs were excessive. He claimed that because he recovered "all of the damages he sought through this litigation, it cannot be legitimately disputed that Ward not only prevailed on a significant issue in this litigation but also derived virtually all of the benefits sought by this litigation." Id. at 210. While acknowledging that he recovered from Dooley, not from the Trust, Ward argued that he should not be "penalized" for asserting his alternative claim against Dooley. Id. at 213. Ward argued that he relied on Dooley's assertion of authority to bind the Trust, and "[i]f Dooley misrepresented his authority, than [sic] the Trust would not be liable but Dooley would. Conversely, if Dooley accurately represented his authority, he would not be liable for misrepresentation, but the Trust would be bound by Dooley's agreement."

4

Id. Either result would allow Ward's recovery. He concluded, "[t]he fact that the jury ultimately adopted Ward's false representation theory rather than his contract theory does not change the fact that Ward fully achieved his objectives and thus prevailed." Id.

The district court agreed with Ward. The court found that, "[a]rguably, both parties prevailed on significant issues in the litigation and obtained the relief sought in the litigation. . . . Although Plaintiff did not prevail against the Trust on any of his claims, . . . Plaintiff did prevail against Defendant Dooley." Id. at 232. The court further reasoned that, "[w]hile it might be appropriate in some cases to separably consider who prevailed as between the plaintiff and each individual defendant, . . . that analysis would not be useful in this case." Id. Finally, the court held that "the claims against [the defendants] are so interrelated that it would not be appropriate to parse out a prevailing party as to each individual claim asserted against each individual defendant," and so "neither the Trust nor the Plaintiff [was] the prevailing party in this case." Id. at 233–34. Because the district court determined that neither party prevailed, it did not reach the reasonableness of the fees and costs claimed by the Trust. The Trust appeals.

III.

The sole issue on appeal is whether Ward or the Trust was the "prevailing party" for purposes of the contract provision requiring that "costs and reasonable attorney fees shall be awarded to the prevailing party," where the Trust prevailed on every claim between it and Ward, but Ward fully prevailed on his claims against another defendant who was not party to the contract.

5

*A. We apply a de novo standard of review to contract interpretation.*

The parties agree that this is a diversity case governed by Colorado substantive law. Aplt. Br. at 2; Aplee. Br. at 2. "In diversity cases, attorney fees are a substantive matter controlled by state law." Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001 (10th Cir. 2008) (citing N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank, 222 F.3d 800, 817 (10th Cir. 2000)). Contractual fee-shifting disputes generally have two aspects: interpretation of the contract provision and application of that provision to the facts of the case. The two aspects are reviewed under different standards.

Under Colorado law, "[t]he interpretation of language in a contract is a question of law that an appellate court reviews de novo." Agritrack, Inc. v. DeJohn Housemoving, Inc., 25 P.3d 1187, 1192 (Colo. 2001) (citation omitted). This rule pertains to attorney fee disputes. "Although we typically review a district court's award of costs under an abuse of discretion standard, we review a contractual provision regarding award of such costs de novo." Allison v. Bank One-Denver, 289 F.3d 1223, 1246 (10th Cir. 2002) (internal citation omitted). See also Agritrack, 25 P.3d at 1193 (interpreting a fee-shifting provision de novo). An incorrect contract interpretation by the trial court obviates any argument for deference to the trial court's determination.

The outcome of this appeal turns on our reading of the Listing Contract. If "prevailing party" means the party that prevailed as between the parties to the Listing Contract, the Trust is entitled to attorney fees. If "prevailing party" means the party that prevailed in the lawsuit as a whole, including against a defendant who was not a party to

6

the Listing Contract, then we would analyze the district court's decision under an abuse of discretion standard and affirm its decision.

*B. "Prevailing party" means the party that prevails as between the parties to the contract*

The Colorado Court of Appeals has addressed a fee-shifting provision which is similar to the provision at issue here. Scott v. Art of Optiks Cherry Creek, Inc., 60 P.3d 770 (Colo. App. 2002). There, plaintiff Scott sued three defendants, including Art of Optiks Cherry Creek, Inc. ("Cherry Creek"). Id. Scott and Cherry Creek were parties to a contract which provided attorney fees for "[t]he prevailing party in any suit to enforce any provision of, or for breach of any provision of this Agreement." Id. at 771. Before the case proceeded to trial, the court granted summary judgment to Cherry Creek on all claims brought against it, but Scott went on to recover on his claims against one of the other two defendants. In Scott, as in this case, "[t]he trial court determined that Scott was the prevailing party 'within the context' of the lawsuit." Id. The Colorado Court of Appeals court noted that "[t]he issue before us now—who is the prevailing party when one party receives judgment against some, but not all of the other parties—is an issue of first impression." The court held that, where two parties have a contractual fee-shifting provision awarding fees to the prevailing party, the court should look only to the outcome as between the parties to the contract to determine the prevailing party for contract purposes. "To hold otherwise would produce an unfair and absurd result, preventing recovery of attorney fees by a party who successfully defends against all claims against it simply because the opposing party prevailed on claims against other parties." Id. (citing

7

Tulsa Litho Co. v. Tile & Decorative Surfaces Magazine Publ'g, Inc., 69 F.3d 1041, 1043 (10th Cir. 1995); Christie-Lambert Van & Storage Co. v. McLeod, 39 Wash. App. 298, 305 (1984)). Based on this reading, the court held that "Cherry Creek was the prevailing party as between it and Scott," Scott, 60 P.3d at 771, reversing the district court's decision.

While the Colorado Supreme Court has not ruled on this issue, "[if] . . . the state's highest court has not decided the issue presented, we may either certify the question to that court or predict how it would rule. Further, 'this court must . . . follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise.'" Koch v. Koch Indus., Inc., 203 F.3d 1202, 1230 (10th Cir. 2000) (citing Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir. 1984)) (other internal citations omitted). See also West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that [decision] is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). While the Colorado Court of Appeals occupies a unique position, in that "one panel is not obligated to follow the precedent of another," In re Estate of Becker, 32 P.3d 557, 563 (Colo. App. 2000), we treat its decisions as we would those of any other state court of appeals. See, e.g., Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 840 n.5 (10th Cir. 2003); Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1231 (10th Cir. 2001).

8

There is no authority suggesting that the Colorado Supreme Court would not follow <u>Scott</u>. In fact, <u>Scott</u> appears to be in keeping with the spirit of other decisions on similar points from the Colorado courts. See <u>Dennis I. Spencer Contractor, Inc. v. City of Aurora</u>, 884 P.2d 326, 332 (Colo. 1994) ("[W]here a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees."); <u>Brock v. Weidner</u>, 93 P.3d 576, 579 (Colo. App. 2004) ("[Fee-shifting] provisions generally contemplate that the 'prevailing party' will be entitled to recover its attorney fees and that there will be one winner and one loser regarding payment of those fees.").

Ward argues that the language in the fee-shifting provision in <u>Scott</u> differs significantly from the provision in the present case, such that <u>Scott</u> is inapplicable. Aplee. Br. at 3–4. Because the fee-shifting provision in <u>Scott</u> allowed recovery for "[t]he prevailing party in any suit to enforce any provision of, or for breach of any provision of this Agreement," Ward argues that the court necessarily had to consider only the outcomes on "claims . . . brought by or against parties to the agreement." <u>Id.</u> Ward contends that in <u>Scott</u> the contract itself required the trial court to consider the "judgments obtained by the various parties, not the overall trial result, in determining who is the prevailing party." <u>Id.</u> (citing <u>Scott</u>, 60 P.3d at 771). In contrast, Ward points to the language of the contract at issue here and argues:

> the fee-shifting provision in the present case is extremely
> broad, unambiguously stating that, "[i]n case of arbitration or
> litigation concerning this contract, costs and reasonable
> attorney fees shall be awarded to the prevailing party." . . .

9

> [T]he parties chose to provide for an award of attorneys fees based on whoever prevailed in the context of the overall "litigation concerning the contract." Given that the parties chose to define the scope of a party's status as a prevailing party so broadly, it was incumbent upon the trial court to consider the parties' relative successes within the context of the overall "litigation concerning the contract," including claims sounding in tort and claims against third parties.

Aplee. Br. at 3–4.

Ward's argument begs the question. Ward's premise that "the parties chose to provide for an award of attorneys fees based on whoever prevailed in the context of the overall 'litigation concerning the contract'" has no support in the contract language. Had the Listing Contract defined prevailing party, and defined it broadly in the way Ward describes, that argument would carry the day. But the contract did not define prevailing party. Certainly, the Listing Contract allowed a broader set of claims to fall under the fee-shifting provisions than the contract in <u>Scott</u>, but that does not change our analysis. Ward's argument presumes, without any support, that a broader fee-shifting provision requires a broader prevailing-party analysis. Thus, we are still left with the question of whether the contract requires that we determine who prevailed in the litigation generally, or who prevailed as between the contracting parties. <u>Scott</u> answers that question by directing us to "consider the judgments obtained by the various parties, not the overall trial result." In spite of the differences in contract language, <u>Scott</u> controls the outcome here. We conclude that the contract language requires us to look only to the parties to the Listing Contract and determine who prevailed as between them.

In his argument on appeal, Ward relies on the close relationship between Dooley

10

and the Trust and on his recovery from Dooley to argue that he prevailed. Aplee. Br. at 22-23. This seems to follow the district court's observation that "Plaintiff successfully prevailed on one of two alternative theories bought against an agent of the [T]rust, and was successful in recovering the entire amount of the commission he sought in his contract with the [T]rust." Aplt. App. at 233. However, as the Trust points out, finding Dooley personally liable implied that the Trust was not liable. Aplt. Br. at 25-28. "If Dooley misrepresented his authority, than [sic] the Trust would not be liable but Dooley would." Aplt. App. at 213. If anything, finding that Dooley had exceeded his authority as an agent further vindicated the Trust, weakening Ward's claim that he prevailed as against the Trust.

In summary, based on the decision in <u>Scott</u>, we conclude that, under Colorado law, "prevailing party" in the fee-shifting provision at issue means the party that prevails as between the parties to that contract, not in the context of the litigation as a whole. Ward did not prevail against the Trust on any of his claims, and the Trust did prevail by successfully defending against all claims brought against it by Ward. The Trust is the prevailing party as between it and Ward. That Ward prevailed against Dooley does not alter the Trust's contractual right to recover reasonable fees and costs.[1]

---

[1] We do not reach any question regarding the reasonableness of the attorney fees and costs requested by the Trust. Those determinations must be made in the first instance by the district court on remand.

11

IV.

The district court's judgment is REVERSED and the case is REMANDED for further proceedings.

Entered for the Court


Mary Beck Briscoe
Chief Judge